EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen Julia Rodríguez Figueroa, et al.<br><br>      Recurridos<br><br>           v.<br><br>Centro de Salud Mario Canales Torresola, et al.<br><br>      Peticionario | Certiorari<br><br>2017 TSPR 53<br><br>197 DPR ____ |

Número del Caso: CC-2014-1081

Fecha: 12 de abril de 2017

Tribunal de Apelaciones:

     Región Judicial de Caguas y Humacao

Abogados de la Parte Peticionaria:

     Lcdo. José O´Neill Font
     Lcdo. Norberto Pagán Rivera

Abogados de las Partes Recurridas:

     Lcdo. Carlos Agrelot Aponte
     Lcda. Mayra Estrella Pérez-Valdivieso
     Lcda. Ivelisse Iguina de la Rosa
     Lcdo. Héctor Moreno Luna
     Lcda. Laura Moreno Orama
     Lcda. Coral Rivera Torres
     Lcda. Nidia Teissonniere Rueda

Materia: Responsabilidad civil extracontractual: Alcance del límite de responsabilidad por acciones de impericia médica respecto a los Centros Médicos Académicos Regionales y los facultativos que en ellos laboran, conforme a la Ley de los Centros Médicos Académicos Regionales de Puerto Rico.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carmen Julia Rodríguez Figueroa, *et al.* | | |
| Recurridos | | |
| v. | **Núm.** <u>CC-2014-1081</u> | |
| Centro de Salud Mario Canales Torresola, *et al.* | | |
| Peticionario | | |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 12 de abril de 2017

En esta ocasión nos corresponde determinar el alcance del límite de responsabilidad por acciones de impericia médica que contempla el Artículo 7 de la *Ley de los Centros Médicos Académicos Regionales de Puerto Rico*, Ley Núm. 136 de 27 de julio de 2006 (Ley Núm. 136 de 2006), 24 L.P.R.A. secs. 10031 *et seq.*, según enmendada, respecto a los Centros Médicos Académicos Regionales y los facultativos que ejercen labores docentes en éstos.

Conviene, pues, repasar someramente los hechos pertinentes para dilucidar la controversia.

## I

El 25 de junio de 2009, el Sr. Javier Santiago Rodríguez acudió al Centro de Diagnóstico y Tratamiento (CDT) de Jayuya. Allí indicó, entre otros particulares, que sentía dolor en el cuerpo, náuseas y fiebre. Luego de que se le suministraran una inyección y dos sueros para hidratarlo, el señor Santiago Rodríguez fue dado de alta.

Sin embargo, el 26 de junio de 2009, éste regresó al CDT en cuestión, alegando sufrir dolencias similares. Luego que se le realizara un examen de sangre, y dado que éste reflejó un bajo contaje de plaquetas, el señor Santiago Rodríguez fue referido al Saint Luke's Hospital (u Hospital Episcopal San Lucas).[1]

Al llegar a dicha institución hospitalaria, el señor Santiago López fue evaluado en la sala de emergencias y admitido al cuidado de la Dra. Melanie Albors Mora (peticionaria), quien procedió a realizar el diagnóstico de rigor. Empero, el 28 de junio de 2009, luego de haber sido trasladado a la unidad de cuidados intensivos del hospital en cuestión, el señor Santiago Rodríguez falleció.

Así las cosas, el 24 de junio de 2010, la madre del difunto, sus hermanas y su expareja consensual -por sí y en representación de los hijos que procreó con éste- (en conjunto, las demandantes) presentaron una demanda ante el Tribunal de Primera Instancia.[2] Esencialmente, alegaron que tanto la doctora Albors Mora, como el Hospital Episcopal San Lucas, entre otros (en conjunto, los

---

[1] Conviene señalar en este momento que el Hospital Episcopal San Lucas es parte de un consorcio con la Escuela de Medicina de Ponce. Mediante éste, el hospital provee un Programa de Residencia de Medicina Interna, debidamente acreditado.

[2] Nótese que las demandantes, posteriormente, enmendaron su demanda en dos ocasiones. Estas enmiendas, sin embargo, son impertinentes para la resolución de la controversia que nos atañe.

demandados), fueron negligentes al proveerle servicios médicos al difunto señor Santiago Rodríguez.

Los demandados, por su parte, contestaron oportunamente la demanda. En lo pertinente a la controversia que nos ocupa, la doctora Albors Mora alegó que ejercía labores docentes en el Programa de Residencia de Medicina Interna que proveía la Escuela de Medicina de Ponce en el Hospital Episcopal San Lucas. Ello, en el contexto del consorcio hecho entre ambas entidades, el cual, a su vez, está comprendido dentro del Centro Médico Académico Regional del Sur-Oeste. Por lo tanto, debido a la afiliación del consorcio con el Centro Médico Académico Regional, negó su responsabilidad e invocó la presunta inmunidad absoluta que consagra la Ley Núm. 136 de 2006, según enmendada.

Habida cuenta de lo anterior, el 13 de mayo de 2011, el Hospital Episcopal San Lucas presentó una moción solicitando que se dictara sentencia sumaria, bajo el fundamento de que también le era de aplicación la inmunidad que establece la referida ley. El 6 de junio de 2011, la doctora Albors Mora se unió a esta solicitud.

Luego de varios trámites procesales, el foro primario declaró *sin lugar* la referida moción de sentencia sumaria. En síntesis, razonó que la inmunidad consagrada en el artículo 7 de la Ley Núm. 136 de 2006 tuvo el efecto de imponerle *límites monetarios* a la responsabilidad de los Centros Médicos Académicos

Regionales, así como a los facultativos que ejercieran labores docentes en éstos, tal y como es el caso de la doctora Albors Mora. Ello, según el razonamiento del foro primario, no suponía una inmunidad absoluta, cuyo efecto fuera la inexistencia de una causa de acción respecto al hospital y la galena.

Inconforme, tanto el Hospital Episcopal San Lucas como la doctora Albors Mora presentaron recursos de *certiorari* ante el Tribunal de Apelaciones. El 30 de septiembre de 2014, sin embargo, dicho foro denegó la expedición de los recursos en cuestión. Así, la peticionaria recurrió ante este Tribunal, arguyendo -en esencia- que el foro apelativo intermedio erró al no desestimar la demanda en su contra por la vía sumaria cuando a ésta le cobijaba la inmunidad absoluta establecida por virtud de la Ley Núm. 136 de 2006 y la Ley Núm. 103 de 27 de junio de 2011.

## II

### A

Mediante la aprobación de la Ley Núm. 136 de 2006, la Asamblea Legislativa creó las entidades jurídicas conocidas como los Centros Médicos Académicos Regionales (CMAR). En esencia, éstos son un conjunto de "uno (1) o más hospitales, facilidades de salud, grupos médicos y programas de formación y entrenamiento de profesionales de la salud relacionadas a una Escuela de Medicina

acreditada, cuya misión es la educación, investigación y provisión de servicios de salud". 24 LPRA sec. 10031 (b).[3]

La creación de los CMAR tiene diversos propósitos. En primer lugar, mediante éstos, se intenta fortalecer y desarrollar un sistema integrado de salud pública. Ello, con tal de crear un ambiente óptimo en el que se ofrezcan y brinden servicios de salud "costo efectivo[s], accesibles y de buena calidad a todas las personas por igual, sin tener en cuenta su raza, sexo, creencias religiosas y políticas". 24 LPRA 10033. Por otro lado, se utilizan para desarrollar programas de educación para los profesionales de salud que no cuentan con suficientes espacios de internado y residencia -con los pacientes y talleres clínicos necesarios- para rendir sus servicios y proseguir con sus prácticas. Véase Cámara de Representantes, *Informe positivo sobre el P. del S. 985*, 3ra Ses. Ord., 15va Asam. Leg. Así, se pretende evitar poner en riesgo la acreditación de programas de educación y adiestramiento existentes, al igual que el éxodo de nuestros profesionales de salud. Véase Senado de Puerto

---

[3] El Artículo 6 de la referida *Ley* le confiere a la Junta de Directores de los CMAR la facultad de "[n]egociar y contratar con las instituciones de salud que posean los requisitos mínimos para pertenecer al Centro Médico Académico Regional, a través de acuerdos de afiliación". 24 LPRA sec. 10034 (3). Según comentamos, al amparo de esta disposición, se estableció un consorcio entre el Hospital Episcopal San Lucas y la Escuela de Medicina de Ponce para proveer un Programa de Residencia de Medicina Interna. Véase *Apéndice XXII*, pág. 334.

Rico, *Informe Positivo sobre el P. Del S. 985*, 3ra Ses. Ord., 15va Asam. Leg.

Cabe destacar que los CMAR, funcionan "como entidades independientes sin fines de lucro y separadas de cualquier otra agencia o instrumentalidad del Gobierno del Estado Libre Asociado de Puerto Rico". 24 LPRA sec. 10032. A su vez, éstos "tendrán personalidad jurídica, separada de todo funcionario del Gobierno del Estado Libre Asociado de Puerto Rico y sus agencias, instrumentalidades, corporaciones públicas y subdivisiones". *Id*.

## B

En lo pertinente a la controversia que nos atañe, el Artículo 7 de la *Ley de los CMAR* establece los límites de responsabilidad a los que estarán sujetos los "estudiantes, médicos en adiestramientos postgraduado y miembros de facultad de los mismos, por los procedimientos médicos que se lleven a cabo en dichos Centros en el ejercicio de sus funciones". 24 LPRA sec. 10035. En particular, la Asamblea Legislativa hizo extensiva a estos individuos las limitaciones de responsabilidad que disfruta el Estado Libre Asociado de Puerto Rico al amparo de la *Ley de pleitos contra el Estado*, 32 LPRA secs. 3077-3092a. Así, la intención legislativa se materializó mediante la imposición de una limitación a la responsabilidad de "un máximo de setenta y cinco mil dólares ($75,000) por los daños sufridos por

una persona y hasta ciento cincuenta mil dólares ($150,000) cuando los daños y perjuicios se le causaron a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado. No obstante, se hizo constar, además, que se extenderían al consorcio lo estipulado en el **tercer párrafo** de la sec. 4105 del Título 26". 2006 LPR 878 (énfasis suplido).

Nótese que la última oración del precitado artículo hace referencia al Artículo 41.050 del *Código de Seguros de Puerto Rico*. Al momento de los hechos, el tercer párrafo del Artículo 41.050 disponía lo siguiente:

> Ningún profesional de servicios de salud podrá ser incluido como parte demandada en una acción civil de reclamación de daños por culpa o negligencia por impericia profesional ("malpractice") que cause en el desempeño de su profesión, mientras dicho profesional de servicios de salud actúe en cumplimiento de sus deberes y funciones como empleado del Estado Libre Asociado de Puerto Rico, sus dependencias, e instrumentalidades, El Centro Comprensivo de Cáncer de la Universidad de Puerto Rico y municipios o contratistas de éstos, mientras actúe en cumplimiento de sus deberes y funciones en las áreas de obstetricia, ortopedia, cirugía general o trauma en una instalación médico-hospitalaria propiedad del Estado Libre Asociado, sus dependencias, instrumentalidades y/o municipios, independientemente de si dicha instalación está siendo administrada u operada por una entidad privada. Ley Núm. 260 de 5 de diciembre de 2006, 2006 LPRA 1371.

Según se desprende de éste, la Asamblea Legislativa optó por conferir a ciertos profesionales de la salud, que se desempeñaran como empleados de determinadas instituciones -en áreas particulares de práctica-, inmunidad contra

acciones de daños y perjuicios por impericia profesional médico-hospitalaria.

Por ende, es evidente que el Artículo 7 de la *Ley de los CMAR* hizo referencia a dos tipos muy distintos de limitaciones a la responsabilidad. Por tanto, para esclarecer este asunto, en primer lugar, es necesario precisar la distinción fundamental entre el término 'límite de responsabilidad' e 'inmunidad'.

La figura de la inmunidad -según se manifiesta en este contexto- es conferida por la Asamblea Legislativa en atención a consideraciones de política pública que rebasan los límites de los actos u omisiones del individuo que la disfruta. *Romero Arroyo v. E.L.A.,* 127 DPR 724, 745 (1991). En consideración al Artículo 41.050 del *Código de Seguros*, y las disposiciones que lo precedieron, hemos comentado que la 'inmunidad' "[n]o se trata [] de una defensa personal del médico ante reclamaciones en su contra, sino de inexistencia de causa de acción". *Lind v. Rodríguez*, 112 DPR 67, 69 (1982). Véase, además, *Rodríguez Ruiz v. Hosp. San Jorge*, 169 DPR 850 (2007); *Flores Román v. Ramos González*, 127 DPR 601 (1990); *Vázquez Negrón v. E.L.A.*, 113 DPR 148 (1982); *Vázquez v. E.L.A.*, 109 DPR 19 (1979). Por tanto, un individuo que disfrute de inmunidad no puede ser objeto de un litigio, independientemente de que haya realizado un acto u omisión, culposo o negligente.

De otra parte, un 'límite de responsabilidad' se refiere a una limitación impuesta por la Asamblea Legislativa a las cuantías compensables por actos u omisiones culposos o negligentes. Véase, por ejemplo, *Defendini Collazo et al. v. E.L.A.*, 134 DPR 28 (1993). En la medida que un individuo no pueda ser incluido como demandado en un pleito, al estar cobijado por una inmunidad, cualquier límite a la cuantía a recobrarse sería inaplicable. La figura de la inmunidad, al ser más abarcadora, absorbe la protección que confiere el límite a la responsabilidad. Por ende, si bien ambas persiguen un fin similar, las figuras son mutuamente excluyentes, en tanto la aplicación de una necesariamente excluye la aplicación de la otra.

Por otro lado, es necesario puntualizar que el caso ante nuestra consideración fue presentado en el año 2010 y la normativa aplicable al caso es la vigente a esa fecha. Empero, resulta pertinente examinar las enmiendas que posteriormente sufrieron tanto el Artículo 7 de la *Ley de los CMAR* como el Artículo 41.050 del *Código de Seguros*. Ello, pues, mediante el estudio de este desarrollo legislativo, queda de manifiesto que el legislador reiteró su intención original, a saber, extender la aplicación de los límites de responsabilidad que disfruta el Estado Libre Asociado de Puerto Rico, al amparo de la *Ley de pleitos contra el estado*, a los estudiantes, médicos en

adiestramiento y miembros de facultad que realicen procedimientos médicos en los CMAR.

## C

En específico, el Artículo 41.050 del *Código de Seguros* ha sufrido innumerables enmiendas. [4] En lo pertinente, el 27 de junio de 2011, la Asamblea Legislativa enmendó, tanto esta disposición como el Artículo 7 de la *Ley de los CMAR*, mediante la aprobación de la Ley Núm. 103 y la Ley Núm. 104. Resulta imprescindible destacar que, en la exposición de motivos de la Ley Núm. 103, la Asamblea Legislativa hizo constar que

> [l]a creación de estos Centros [Médicos Académicos Regionales] y el éxito en el funcionamiento de los mismos dependerá en gran medida de que **se les extienda a estos Centros los límites de responsabilidad civil por impericia profesional médico-hospitalaria ("malpractice"), a que está sujeto el Gobierno de Puerto Rico.** Aunque la ley que creó los Centros Médicos Académicos Regionales de Puerto Rico provee para que éstos estén cubiertos por los límites por los que responde el Estado en casos de demandas por impericia médico-hospitalaria, **existe duda sobre el alcance de dicha inmunidad en cuanto a los facultativos y estudiantes que en ellos laboran. Es por ello que esta Asamblea Legislativa entiende necesario aclarar que quienes están sujetos a los límites que le aplican al Estado, además de los propios Centros Médicos Académicos Regionales de Puerto Rico, son los estudiantes, residentes y profesionales de salud que en ellos laboren mientras se encuentren ejerciendo funciones docentes.** Además, es menester aclarar que la intención legislativa es extender a estos centros y a los estudiantes, residentes y profesionales de la salud en funciones docentes

---

[4] Véase *Rodríguez Ruiz v. Hospital San Jorge*, 169 DPR 850, 861-871 (2007).

> los límites del Estado en casos de demandas por actos de impericia médico hospitalaria tal y como se extendieron dichos a la Universidad de Puerto Rico . . . No se trata, pues, de incluir a los Centros Médicos Académicos Regionales como una de las entidades por las cuales responde el Estado al amparo de la Ley Núm. 104 de 29 de junio de 1955, según enmendada. *Exposición de Motivos*, Ley Núm. 103 de 2011.

Así, queda de manifiesto que el legislador identificó un problema de interpretación que surgía del mismo texto de la ley. Por tanto, optó por aclarar esta disputa. Entiéndase, no cambió la garantía conferida, meramente esclareció su extensión.

A esos efectos, la Ley Núm. 103 de 2011 alteró el lenguaje de la última oración del Artículo 7 de la *Ley de los CMAR* para que lea como sigue: "Además, se extenderá al consorcio lo estipulado en el **quinto párrafo** de la sec. 4105 del Título 26". 24 LPRA sec. 10035 (énfasis suplido). Por otro lado, destacamos que -al enmendarse- el Artículo 41.050 del *Código de Seguros* sufrió una alteración en cuanto al orden de sus párrafos. A saber: introdujo un nuevo cuarto párrafo, alterando así el orden de los próximos cuatro (4) párrafos, y por último se añadió un octavo párrafo.

Ahora bien, aclaramos que, ese mismo día, se aprobó la Ley Núm. 104 de 2011 que enmendó nuevamente el Artículo 41.050 del *Código de Seguros*. Así, se alteró nuevamente el orden del artículo para que el párrafo octavo, añadido mediante la Ley Núm. 103 de 2011,

figurara como el párrafo quinto. Éste leyó, en lo pertinente, como sigue:

> Se aplicarán los límites de responsabilidad que la Ley Núm. 104 de 29 de junio de 1955, según enmendada, impone al Estado Libre Asociado de Puerto Rico, en similares circunstancias, en los siguientes escenarios:
> . . . .
> (vii) A los Centros Médicos Académicos Regionales de Puerto Rico, sus estudiantes y miembros de facultad cuando recaiga sentencia por actos constitutivos de impericia médica hospitalaria ("malpractice") cometida por sus estudiantes y miembros de su facultad en el desempeño de sus funciones docentes [. . .].[5]

De esta forma, el legislador logró alinear sus expresiones en torno a la limitación monetaria que fija el Artículo 7 de la *Ley de los CMAR*, con una limitación monetaria idéntica que fue añadida con suma especificidad al *Código de Seguros*.

### III

Según reseñamos, el señor Santiago Rodríguez acudió al Hospital Episcopal San Lucas con tal de recibir asistencia médica. Dicha institución hospitalaria era parte de un consorcio con la Escuela de Medicina de

---

[5] Cabe destacar que el Artículo 41.050 del *Código de Seguros* fue enmendado posteriormente mediante la Ley Núm. 278 de 29 de septiembre de 2012, la Ley Núm. 101 de 13 de agosto de 2013 y la Ley Núm. 150 de 10 de diciembre de 2013. Consecuentemente, en la actualidad, el orden de los párrafos quedó nuevamente alterado. Por tanto, el quinto párrafo fijado mediante la Ley Núm. 104-2011, es ahora el octavo párrafo. Desafortunadamente, la Asamblea Legislativa no enmendó el Artículo 7 de la *Ley de los CMAR* para conformar la referencia que éste hace al Artículo 41.050. No obstante, tras examinar las enmiendas en cuestión, consideramos que tal proceder no respondió a una intención del legislador de alterar los límites de responsabilidad fijados.

Ponce, al amparo de la *Ley de los CMAR*. Lamentablemente, el señor Santiago Rodríguez falleció luego de haber sido trasladado a la unidad de cuidados intensivos de este Hospital.

Tras instarse el pleito, tanto el Hospital como la doctora Albors Mora solicitaron la desestimación sumaria de la demanda en su contra al interpretar que, conforme al Artículo 7 de la *Ley de los CMAR* y la Ley Núm. 103 de 2011, estaban cobijados por una 'inmunidad absoluta' que impedía que fueran demandados. El tribunal de instancia denegó esta solicitud debido a que concluyó que a las partes sólo le aplicaba un límite monetario a la cuantía por indemnización que, en su día, podría ser impuesta. Inconformes, las partes demandadas acudieron en revisión al Tribunal de Apelaciones, foro que se negó a expedir el recurso de *certiorari* presentado por ésta.

Ante este Tribunal, la doctora Albors Mora arguye que el análisis de la disposición en cuestión no puede limitarse a una lectura literal. Así, pues, plantea que la intención del legislador fue equiparar a los CMAR con la inmunidad que le fue conferida a la Universidad de Puerto Rico y sus facultativos, mediante la aprobación de la Ley Núm. 98 de 24 de agosto de 1994, según enmendada.[6]

---

[6] Ciertamente, según citamos, la exposición de motivos de la Ley Núm. 103 de 2011 hace referencia a la Ley Núm. 98 de 24 de agosto de 1994. A su vez, tal y como plantea la peticionaria, la Ley Núm. 98 confiere a ciertos facultativos que laboran para la Universidad de Puerto Rico una inmunidad -en ciertas circunstancias- y sujeta a

Por tanto, en síntesis, concluye que le debe cobijar una inmunidad total y absoluta.

En innumerables ocasiones hemos expresado que al interpretar una disposición legislativa tenemos el propósito de hacer cumplir la intención del legislador. Véase, *Zayas Rodríguez v. P.R.T.C.*, 2016 TSPR 118, 195 DPR ___, en la pág. 16. Así, al efectuar el ejercicio interpretativo debemos atribuirle a la legislación "un sentido que asegure el resultado que originalmente se quiso obtener". *Méndez Pabón v. Méndez Martínez*, 151 DPR 853, 858-859 (2000); *Chase Manhattan Bank v. Mun. De San Juan*, 126 DPR 759, 766 (1990). Ciertamente, nuestra función no es irrestricta, pues el Artículo 14 del Código Civil de Puerto Rico dispone que "[c]uando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu". 31 LPRA sec. 14.

Ahora bien, tenemos la responsabilidad de armonizar, en la medida posible, todas las disposiciones de una

---

la institución a los límites monetarios fijados en la *Ley de pleitos contra el Estado*. Ahora bien, estimamos que hay una distinción fundamental entre la protección que el legislador abrogó a la Universidad, por ser ésta una entidad pública, y aquella que optó por conferirle a los CMAR. Según reseñamos anteriormente, los CMAR son entidades sin fines de lucro totalmente separadas del Estado. Por tanto, en consideración a ello y analizando el lenguaje de los precitados artículos, no encontramos razón para no validar la intención del legislador de dar un tratamiento distinto a los CMAR en lo que respecta a los límites de responsabilidad aplicables.

pieza legislativa a ser interpretada. De esta forma, buscamos un resultado lógico y razonable que encarne la intención del legislador. Véase *Pueblo v. Zayas Rodríguez*, 147 DPR 530 (1999).

Conforme la discusión precedente, reconocemos que la referencia que hacía el Artículo 7 de la *Ley de los CMAR* al Artículo 41.050 del *Código de Seguros* podría poner en duda cuál era la protección aplicable a los CMAR, los estudiantes, los médicos practicantes y miembros de facultad que ahí se desempeñaran en caso de que incurrieran en impericia médico-hospitalaria. Ello, pues, aunque el texto del Artículo 7 expresamente disponía una limitación monetaria, al hacerles extensivo el lenguaje del tercer párrafo del Artículo 41.050, referente a la inmunidad, era posible razonar que a éstos les cobijaba una inmunidad absoluta.

No obstante, es nuestro criterio que la intención legislativa tras la redacción del Artículo 7 de la Ley Núm. 136 de 2006 fue establecer la aplicación de los referidos límites de responsabilidad, no de abrogar inmunidad. Así concluimos pues, en primer lugar, el 'límite de responsabilidad' y la inmunidad son figuras jurídicas mutuamente excluyentes. Por tanto, resulta incongruente interpretar que la intención original del legislador fue pretender aplicarlas de forma simultánea. De otra parte, reconocemos que el lenguaje consagrado en el tercer párrafo del Artículo 41.050 del *Código de*

*Seguros* atiende de manera muy particular las instituciones, individuos y circunstancias en que será aplicable la referida inmunidad. Somos del criterio que, pretender sobreponer la inmunidad a los CMAR, a pesar de que a éstos no se les incluyó en el Artículo 41.050, sería contrario al mandato legislativo que se materializó en el Artículo 7 de la *Ley de los CMAR* al fijar los límites de responsabilidad.

Por último, según reseñamos, el posterior desarrollo legislativo de los precitados artículos pone de manifiesto que el legislador optó por reiterar su intención original. Particularmente, tras la aprobación de la Ley Núm. 103-2011, se disipó cualquier confusión respecto a la protección aplicable y al uso impreciso de la Asamblea Legislativa de los términos 'inmunidad' y 'límite de responsabilidad'. En fin, quedó totalmente claro; tanto los CMAR, los estudiantes y miembros de la facultad, en casos constitutivos de impericia médico-hospitalaria, no les cobija una 'inmunidad', sino un límite monetario a las cuantías que se le podría imponer. Por consiguiente, aclaramos que estas entidades e individuos pueden ser incluidos en una demanda sobre impericia médico-hospitalaria.

El resultado al que hoy llegamos es el correcto. Nos encontramos sumamente preocupados con la posibilidad de que una interpretación equivocada de los referidos artículos haya llevado a los consorcios, creados al

amparo de la *Ley de los CMAR*, a establecer relaciones contractuales insuficientes con los estudiantes, médicos practicantes y miembros de la facultad. A saber, que se haya partido de la premisa errada de que la institución y estos individuos disfrutaban de una inmunidad que hacía innecesaria la adquisición de seguros o planificación financiera para enfrentar reclamaciones por impericia médico-hospitalaria. No obstante, no nos corresponde a nosotros establecer o modificar la política pública respecto a la protección conferida a los Centros Médicos Académicos Regionales; dicha prerrogativa le corresponde a las ramas políticas del gobierno.

De conformidad con lo anterior, concluimos que el Tribunal de Apelaciones no erró al denegar la expedición del recurso de *certiorari* presentado por la doctora Albors Mora. Así, pues, se confirma la determinación del Tribunal de Primera Instancia y se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo aquí expuesto.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

| Carmen Julia Rodríguez Figueroa, *et al.* | |
|---|---|
| Recurridos | |
| v. | **Núm.** <u>CC-2014-1081</u> |
| Centro de Salud Mario Canales Torresola, *et al.* | |
| Peticionario | |

SENTENCIA

San Juan, Puerto Rico, a 12 de abril de 2017

Por los fundamentos que anteceden, concluimos que el Tribunal de Apelaciones no erró al denegar la expedición del recurso de *certiorari* presentado por la doctora Albors Mora. Así, pues, se confirma la determinación del Tribunal de Primera Instancia y se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo aquí expuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco concurre y hace constar la siguiente expresión:

"La Jueza Asociada señora Pabón Charneco concurre con la Opinión que antecede. No obstante, debo señalar que las numerosas y frecuentes enmiendas que ha sufrido el Artículo 41.050 de la Ley Núm. 77 de 19 de junio de 1957, según emendada, conocida como Código de Seguros de Puerto Rico, 26 L.P.R.A. Sec. 4105, hacen necesario que la Asamblea Legislativa reexamine su contenido de forma abarcadora y no fragmentada. Esto, para que se exprese clara e inequívocamente la política pública del Estado con relación a la inmunidad o los límites de responsabilidad que le aplican a los profesionales de la salud – en especial, a los estudiantes y residentes de las instituciones médico-hospitalarias públicas y privadas – ante las implicaciones que pueda tener en la contratación de los profesionales de la salud afectados por dicha disposición y en la salud y causas de

acción de los puertorriqueños atendidos por estos".


                    Juan Ernesto Dávila Rivera
                    Secretario del Tribunal Supremo