ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| **PETRA MONTES ALICEA y otros**<br><br>Recurrido<br><br>v.<br><br>**HOSPITAL EPISCOPAL SAN LUCAS, INC., y otros**<br><br>Peticionario | KLCE202401380 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Civil Núm.: **PO2023CV02780**<br><br>Sobre: Daños y Perjuicios; Impericia Médica |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2025.

Comparece ante este Foro, el doctor Carlos García Gubern (doctor García Gubern o parte peticionaria) y solicita que revoquemos la *Resolución* dictada el 8 de noviembre de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce. Mediante la misma, el foro primario declaró *No Ha Lugar* la solicitud de sentencia sumaria parcial instada por el doctor García Gubern.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se revoca el pronunciamiento impugnado.

**I**.

Según surge del expediente, el 21 de septiembre de 2022, el señor Henry Smith García acudió a la Sala de Emergencias del Hospital Episcopal San Lucas de Ponce (en adelante, Hospital) por debilidad y dolor en el pie izquierdo. Este fue admitido en la unidad de telemetría y fue dado de alta el 24 de septiembre de 2022. El 14 de noviembre de 2022, el señor Smith García regresó en ambulancia

a la Sala de Emergencias del Hospital Episcopal San Lucas de Ponce por dolor en la extremidad inferior izquierda. Tras ser evaluado por varios doctores, así como médicos residentes, entre estos, el supervisor doctor García Gubern, se le realizaron pruebas de laboratorio y estudios de imágenes. El 15 de noviembre de 2022, el señor Smith García falleció. El 18 de noviembre de 2022, la patóloga forense, doctora Santa Andino Vergara del Instituto de Ciencias Forenses certificó la causa inmediata de la muerte del señor Smith García como fallo cardíaco descompensado y causas contribuyentes, una úlcera infectada de la pierna izquierda, fallo renal terminal y diabetes mellitus.

Lo anterior provocó que el 13 de septiembre de 2023, la señora Petra Montes Alicea; el señor Henry Smith Montes y la señora Camille Janet Smith Montes, por sí y en representación de la Sucesión de Henry Smith García, (en conjunto, parte recurrida) incoaran una demanda sobre impericia médico-hospitalaria en contra del Hospital Episcopal San Lucas de Ponce; el doctor García Gubern y sus respectivas aseguradoras; entre otros codemandados. En su comparecencia, alegaron que los demandados respondían por la muerte del señor Smith García al actuar de forma negligente durante su tratamiento en el Hospital. Añadieron que el personal médico y de enfermería del aludido Hospital fue negligente al no velar adecuadamente y prevenir que el paciente sufriera una caída traumática y lesiones en su cadera y rodilla derecha. Con relación al doctor García Gubern, esgrimieron que éste desapercibió o ignoró los signos vitales tomados por personal de enfermería, así como la hipotensión y la hipoxemia presentada por el señor Smith García. Particularizaron que el mencionado médico también fue negligente en el tratamiento médico hospitalario brindado al paciente.

En suma, los demandantes razonaron que las acciones y omisiones de los demandados se distanciaron sustancialmente de

los principios que rigen la mejor práctica de la medicina de emergencias, lo cual, a su entender, constituyó el nexo causal de no identificar asertiva y oportunamente el fallo cardiaco que produjo el desenlace fatal del señor Smith García. Solicitaron al tribunal una compensación no menor de $300,000.00 por los daños sufridos por el señor Smith García; $300,000.00 por los daños emocionales y mentales de cada demandante, entiéndase la señora Montes Alicea; el señor Henry Smith Montes y la señora Smith Montes, unidos a una suma a establecerse por los gastos incurridos para gestionar el pleito de referencia.

Tras varios trámites no necesarios de pormenorizar para la resolución de este caso, el 2 de julio de 2024, el doctor García Gubern presentó una *Moción Solicitando se Dicte Sentencia Sumaria Parcial sobre los Límites Aplicable[s] al Caso al Amparo de la Ley CMAR del Aquí Compareciente*. Requirió al TPI que emitiera una sentencia sumaria parcial limitando el tope de su responsabilidad, en caso de que los demandantes prevalecieran en su reclamación, a lo dispuesto en la *Ley de los Centros Médicos Académicos Regionales de Puerto Rico*, Ley Núm. 136 de 27 de julio de 2006, según enmendada, 24 LPRA sec. 10031 *et seq.* (Ley Núm. 136-2006). Acentuó que, al momento de los hechos que originaron la causa de acción de referencia, participaron en el tratamiento del señor Smith García estudiantes de medicina y médicos en entrenamiento en la especialidad de Emergenciología en la Sala de Emergencias del Hospital Episcopal San Lucas de Ponce, a la cual estaba adscrito como médico de tratamiento (*attending*). Arguyó que laboraba activamente en la enseñanza de los residentes en entrenamiento y los estudiantes de medicina en el Programa de Medicina de Emergencia del Consorcio de la Escuela de Medicina de Ponce que se realiza en el Hospital San Lucas de Ponce, la cual a su vez es parte del Centro Médico Académico Regional del Sur (CMAR).

Destacó que se desempeñaba como profesor en el Programa de Medicina de Emergencia y tenía privilegios médicos desde el 2005 y era miembro del Centro Médico Académico Regional del Sur-Oeste. En esa dirección, alegó que brindó tratamiento médico en su función de supervisor de los médicos residentes desde las 6:07 pm hasta las 10:14 pm del 14 de noviembre de 2022.[1] En su escrito, alegó que no existía controversia sobre los siguientes hechos:

1. El 14 de noviembre de 2022, a las 16:32 (4:32 pm) llegó el paciente Henry Smith García y comenzó a recibir tratamiento médico en la Sala de Emergencias del Hospital San Lucas por hinchazón en pierna izquierda y dolor. Este falleció el 15 de noviembre de 2022, a las 7:49 am.

2. La parte codemandada, Hospital San Lucas, es un Centro Médico Académico Regional (CMAR) conforme la define la Ley núm. 136 de 27 de julio de 2006, supra, según enmendada.

3. El programa de Residencia de Sala de Emergencias del Hospital San Lucas está acreditado por ACGME.

4. El Centro Médico Académico Regional del Sur (CMAR) fue aprobado por la Junta Central [del] Departamento de Salud de Puerto Rico.

5. El Centro Médico Académico Regional del SUR (CMAR) tiene aprobado un Reglamento.

6. El Hospital San Lucas y la Escuela de Medicina de Ponce suscribieron un Acuerdo de Afiliación para CMAR.

7. El Dr. Carlos García Gubern labora activamente en la enseñanza de los Residentes en entrenamiento y estudiantes de medicina en el Programa de Medicina de Emergencia del Consorcio de la Escuela de Medicina de Ponce/HESL que se realiza en el Hospital San Lucas de Ponce.

8. Se acompaña la certificación del Centro Médico Académico Regional del Sur-Oeste y la certificación del Hospital San Lucas donde surge que el Dr. Carlos García Gubern es Profesor en el Programa de Medicina de Emergencia y tiene privilegios médicos desde el 2005 en el Departamento de Medicina de Emergencia y es miembro del Centro Médico Académico Regional del Sur-Oeste y por tanto es

---

[1] Junto a esta solicitud anejó los siguientes documentos: Reglamento de la Junta del CMAR; Certificación de Centro Médico Académico Regional del Sur-Oeste; Certificación del Hospital San Lucas; Ley Núm. 136-2006; Declaración Jurada suscrita por el doctor García Gubern y el caso José Rivera Muñoz v. Hospital San Lucas. Apéndice del recurso, págs. 15-28.

acreedor de los beneficios que provee la Ley 136 de 2006.

9. En el tratamiento del paciente Henry Smith García, el Centro Médico Académico Regional/Consorcio entre la Escuela de Medicina de Ponce y el Hospital San Lucas de Ponce y el Dr. Carlos García Gubern, quienes proveen un programa de adiestramiento o educación médica graduada de calidad para Residentes en el área clínica e investigativa en Medicina de Emergencia. En el presente caso estuvieron envueltos en dicho tratamiento médico, Residentes de Medicina de Emergencia de este programa, y estos fueron supervisados por el Dr. Carlos García Gubern desde las 6:07 pm, hasta las 10:14 pm del día 14 de noviembre de 2022.

10. Por lo anterior, no existe ninguna controversia que en este caso aplican los topes a las reclamaciones según los parámetros protegidos en la Ley Núm. 136 de 27 de julio de 2006, 26 [LPRA], sec. 4105.

11. En el presente caso es de aplicación la inmunidad parcial establecida en la Ley de [los] Centros Médicos Académicos Regionales de Puerto Rico, cuyas disposiciones establecen un tope de la compensación a los demandantes de proceder la demanda, para propósitos de recobrar daños por el tratamiento médico brindado en el Hospital San Lucas que son objeto de la reclamación de esta demanda.

12. Se somete Declaración Jurada suscrita por el Dr. Carlos García Gubern donde bajo juramento sostiene la aplicación de esta legislación a su persona.

El 17 de julio de 2024, los demandantes se opusieron al antedicho petitorio del doctor García Gubern. Esencialmente, sostuvieron que estaba en controversia la aplicación de la Ley Núm. 136-2006 al doctor García Gubern, toda vez que, ante la etapa temprana en la que se encontraba el caso, no se había podido determinar el alcance de su participación directa en el tratamiento del señor Smith García y/o como parte del *teaching staff* del CMAR.[2]

Así las cosas, el 8 de noviembre de 2024, el foro *a quo* emitió la *Resolución* que hoy revisamos. Conforme adelantado, el TPI denegó la solicitud de sentencia sumaria parcial incoada por el

---

[2] No surge del expediente anejos a este escrito en oposición.

doctor García Gubern. En su dictamen, el Tribunal consignó los siguientes hechos materiales sobre los cuales no existía controversia:[3]

1. El 14 de noviembre de 2022, a las 16:32 (4:32 pm) llegó el paciente Henry Smith García y comenzó a recibir tratamiento médico en la Sala de Emergencias del Hospital San Lucas por hinchazón en pierna izquierda y dolor. Este falleció el 15 de noviembre de 2022, a las 7:49 am.

2. La parte codemandada, Hospital San Lucas, es un Centro Médico Académico Regional (CMAR) conforme la define la Ley núm. 136 de 27 de julio de 2006, supra, según enmendada.

3. El programa de Residencia de Sala de Emergencias del Hospital San Lucas está acreditado por ACGME.

4. El Centro Médico Académico Regional del Sur (CMAR) fue aprobado por la Junta Central [del] Departamento de Salud de Puerto Rico.

5. El Centro Médico Académico Regional del SUR (CMAR) tiene aprobado un Reglamento.

6. El Hospital San Lucas y la Escuela de Medicina de Ponce suscribieron un Acuerdo de Afiliación para CMAR.

7. El Dr. Carlos García Gubern es Profesor en el Programa de Medicina de Emergencia, tiene privilegios médicos desde el 2005 en el Departamento de Medicina de Emergencia y es miembro del Centro Médico Académico Regional del Sur-Oeste.

Al mismo tiempo, el tribunal expuso que los siguientes hechos materiales están en controversia:

1. Si el codemandado Dr. Carlos García Gubern se encontraba ejerciendo sus funciones como docente según la Ley Núm. 136-2006 al momento de su intervención en los hechos alegados en la Demanda.

2. Las alegaciones de la Demanda en torno a los elementos de la causa de acción en daños y perjuicios por impericia médico-hospitalaria.

En armonía con lo anterior, el Tribunal dispuso, en primer orden, que su examen y análisis de los hechos propuestos y la evidencia documental provista fue uno limitado en consideración a

---

[3] Notas al calce suprimidas.

la temprana etapa procesal en que fue sometida la moción dispositiva. No obstante, reconoció que en nuestro sistema de derecho existe una limitación a la responsabilidad que en su día recaiga sobre los estudiantes, hospitales y miembros de la facultad por una demanda sobre impericia médica profesional por actos ocurridos en el ejercicio de las funciones docentes.

Así, el TPI expresó que:

> En esta etapa temprana de los procedimientos, no estamos en posición de concluir que el codemandado Dr. García Gubern se encontraba ejerciendo sus funciones docentes cuando le brindó tratamiento médico a Don Henry Smith. Este es un hecho material que debe ser dirimido en una vista en sus méritos tras completarse el descubrimiento de prueba. Por tanto, resulta prematura la adjudicación sumaria del planteamiento levantado por dicho codemandado en su solicitud de sentencia sumaria parcial.
> [...]

Al hacer referencia al Art. 2 (a) de la Ley de Reclamaciones y Demandas contra el Estado, el juzgador de los hechos dispuso lo siguiente:

> Por tanto, de determinarse que procede la causa de acción en este caso a favor de más de uno de los demandantes, contrario a lo planteado por el promovente, la indemnización no podrá exceder de la suma de ciento cincuenta mil dólares ($150,000).

En desacuerdo, el doctor García Gubern solicitó reconsideración. Acentuó que, mediante declaración jurada del 26 de junio de 2024, estableció que el manejo médico al paciente Smith García fue bajo su supervisión e instrucción de los médicos residentes del Programa de Emergenciología del Hospital San Lucas de Ponce. Subrayó que del récord médico de la Sala de Emergencias del mencionado Hospital del 14 de noviembre de 2022 surgía la relación con la médico residente de emergenciología. Recalcó, además, que, al estar supervisando al médico residente de forma directa, indirecta o mediante "*oversight*", el "*attending*" lleva a cabo una actividad docente continua, asegurando tanto la calidad del

cuidado del paciente, como el desarrollo profesional del médico residente.[4]

Evaluado lo anterior, el Tribunal denegó la petición de reconsideración mediante *Resolución Interlocutoria* dictada el 25 de noviembre de 2024, notificada el 27 de noviembre de 2024.

Aun inconforme, el doctor García Gubern incoó el recurso que nos ocupa, en el cual le señala al TPI la comisión del siguiente error:

> Incidió en error el Honorable Tribunal de Primera Instancia al resolver que el doctor Carlos García Gubern no estableció que al momento de los alegados hechos de la demanda éste se encontraba ejerciendo sus funciones como docente conforme dispone la Ley Núm. 136-2006.

El Centro Médico Académico Regional del Sur-Oeste compareció como *amicus curiae* para apoyar la posición del doctor García Gubern.

El 4 de febrero de 2025, la parte recurrida instó su *Oposición a Solicitud de Certiorari*. Estamos en posición de resolver.

**II.**

**A.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *León v. Rest. El Tropical,* 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019).[5]

---

[4] Junto a su moción, el doctor García Gubern anejó el récord médico del paciente Smith García en el Hospital Episcopal San Lucas Ponce y un documento del aludido Hospital sobre el consorcio con la Escuela de Medicina de Ponce. Apéndice del recurso, págs. 106-137.

[5] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente será expedido por el

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

---

Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra.*

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

**B.**

La *Ley de los Centros Médicos Académicos Regionales de Puerto Rico*, Ley Núm. 136 de 27 de julio de 2006, según enmendada, 24 LPRA sec. 10031 *et seq.*, creó los Centros Médicos Regionales de Puerto Rico, con el fin de fortalecer y desarrollar los programas para la educación de los profesionales de la salud, la investigación clínica, epidemiológica y sociomédica en Puerto Rico. El propósito de estos Centros es ofrecer servicios de salud de alta calidad y promulgar el desarrollo de la docencia, la investigación y servicios de salud en el país. Exposición de Motivos de la Ley Núm. 136-2006.

En lo pertinente, la referida Ley de los CMAR extiende las limitaciones impuestas en la Ley Núm. 104 de 29 de junio de 1955, según enmendada, a los Centros Médicos Académicos Regionales, y miembros de facultad de estos, por los procedimientos médicos que se lleven a cabo en dichos Centros en el ejercicio de sus funciones académicas y docentes. Dicha limitación establece un máximo de $75,000.00 por los daños sufridos por una persona y hasta $150,000.00 cuando los daños y perjuicios se le causaron a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado. 24 LPRA sec. 10035. En *Rodríguez*

*Figueroa v. Centro de Salud*, 197 DPR 876, 890 (2017), el Tribunal Supremo de Puerto Rico aclaró que la Ley Núm. 136-2006 tuvo el efecto de imponer límites monetarios a la responsabilidad de los CMAR y a los facultativos que ejercieran labores docentes en éstos y no el de conferir una inmunidad absoluta ante cualquier reclamación de daños y perjuicios por impericia médica.

En armonía con lo anterior, en *Ortiz et al. v. Hosp. San Lucas et al.*, 205 DPR 222, 236 (2020), nuestro Máximo Foro determinó que el límite a la responsabilidad comprendido en la Ley Núm. 136-2006 aplica al conjunto de las partes demandadas en un pleito y no a cada parte de forma individual. Añadió que los límites impuestos a la responsabilidad vicaria de los CMAR por las actuaciones de su personal médico se fijan en función de la cantidad de causas de acción o la cantidad de reclamantes y aplican a todos los causantes del daño en conjunto. *Íd.*

### III.

En la presente causa, la parte peticionaria esencialmente aduce que no existe controversia en cuanto a la aplicación del límite de responsabilidad monetaria a favor del Hospital Episcopal San Lucas de Ponce y su facultad docente. Razona que el TPI se equivocó al determinar que, en esta etapa de los procesos, no estaba en posición de concluir que éste se encontraba ejerciendo sus funciones docentes cuando le brindó tratamiento médico al paciente Smith García. Enfatiza que al momento de los hechos alegados en la demanda intervino con el paciente en su función de docente. Lo anterior, como Profesor Auxiliar, junto con los médicos residentes en entrenamiento del Departamento de Emergenciología de la Escuela de Medicina de Ponce y como Director del Programa de Residencia de Emergenciología, además de ser uno de los médicos supervisores (*attending*) del mencionado Programa en la Sala de Emergencias del Hospital Episcopal San Lucas de Ponce. Puntualiza

que la prueba presentada en su moción dispositiva demostró el grado de intervención que hubo entre el médico supervisor (*attending*) y el médico residente. Aduce que en la Sala de Emergencias, el médico supervisor siempre está presente, hecho que no fue considerado por el TPI. Así, esgrime que debemos revocar la determinación recurrida y concluir que al caso le aplica la legislación del CMAR y los límites de responsabilidad fijados en esta.

La parte recurrida expresa tener reparo con los argumentos esbozados por el doctor García Gubern. Añade que éste pretende que el Tribunal le reconozca una inmunidad que el legislador no le concedió y que no se recoge en forma alguna en la ley invocada. A su vez, alega que el doctor García Gubern procura que se establezca un precedente que le cobije no solo a él, sino a todos los galenos participantes y personal en un CMAR, sin la necesidad de acreditar que estos intervinieron con el paciente en el cumplimiento de sus funciones docentes, según lo dispuesto por ley. Arguye que el doctor García Gubern solo puede requerir la protección de la ley concernida respecto a aquellos actos constitutivos de impericia médica hospitalaria cometidos por los estudiantes y miembros de la facultad en el desempeño de sus funciones docentes. Entiende que la inmunidad solicitada bajo la Ley Núm. 136-2006 no es extensiva a los actos u omisiones constitutivos de negligencia médico-hospitalaria ejecutados fuera del desempeño de las funciones docentes que específicamente protege la referida Ley. Por ende, razona que, en la etapa de los procedimientos en los cuales se encuentra el caso de autos, el TPI no cuenta con prueba fáctica que supere el umbral requerido por la Ley Núm. 136-2006. Menciona que, al no haberse producido prueba sobre cuál o cuáles eran los médicos residentes que el doctor García Gubern supervisaba en su capacidad como *"teaching staff"*, ni la forma en que este actuó dentro de dichas funciones durante los días 14 y 15 de noviembre

de 2022, la responsabilidad legal del médico hacia éstos no puede delimitarse de forma general o en el abstracto, sin el contexto concreto de los hechos ocurridos durante el tratamiento brindado al paciente. También está en desacuerdo con que este Foro admita el récord médico sobre los cuales no ha ejercido su derecho a contrainterrogar a testigos sobre el mismo.

Analizado cuidadosamente el expediente junto a los argumentos de las partes, colegimos que procede nuestra intervención en esta etapa de los procedimientos y revocar la decisión recurrida. Ello, a los efectos de consignar que la prueba que obra en el expediente, específicamente en la solicitud de sentencia sumaria parcial, demuestra que el doctor García Gubern se encontraba ejerciendo sus funciones como docente, conforme lo dispone la Ley Núm. 136-2006, durante los hechos que dieron origen a la demanda de referencia por el tratamiento brindado al señor Smith García. Contrario a lo esbozado por el foro de instancia, el mencionado hecho material no requiere ser dirimido en una vista en sus méritos tras completarse el descubrimiento de prueba.

Además, no hay controversia en que, toda vez que el Hospital posee un consorcio con la Escuela de Medicina de Ponce, éste se encuentra sujeto a los límites de responsabilidad establecidos por la Ley Núm. 136-2006.

Consecuentemente, revocamos el pronunciamiento impugnado y devolvemos el caso al TPI para la continuación de los procedimientos. Señalamos que nuestra intervención en la presente controversia se limita únicamente en cuanto al asunto de los límites de responsabilidad pecuniaria dispuestos en la Ley Núm. 136-2006, en caso de que la parte recurrida prevalezca en su reclamación.

**IV.**

Por los fundamentos expuestos, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida. En consecuencia, se devuelve el

caso al TPI para la continuación de los procedimientos, conforme lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones