ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| LETICIA RAMOS OLIVENCIA Y OTROS<br><br>Recurrida<br><br>v.<br><br>HOSPITAL SAN ANTONIO INC. Y OTROS<br><br>Peticionaria | **KLCE202500367** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Mayagüez<br><br>Civil Núm.: MZ2024CV00203<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 12 de mayo de 2025.

Comparecen ante este foro la Dra. Mabel Bonilla Rodríguez (doctora Bonilla) y el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Profesional al Médico Hospitalaria (SIMED), como la aseguradora de la doctora Bonilla (en conjunto, "parte peticionaria") y nos solicitan que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, notificada el 11 de marzo de 2025. Mediante el referido dictamen, el foro primario denegó la moción de desestimación instada por la doctora Bonilla, debido a que, no estaba protegida por la inmunidad que establece el Artículo 41.050 del Código de Seguros de Puerto Rico.

Por los fundamentos que se exponen a continuación, **EXPEDIMOS** el auto de *certiorari* y **REVOCAMOS** la *Resolución* recurrida.

Número Identificador

SEN2025 _____

**I.**

El 2 de febrero de 2024, la Sra. Leticia Ramos Olivencia, por sí y en representación de su hija, la Sra. Lyzbeth M. González Ramos, y de sus nietas, JRG y ARG; el Sr. Jorge González, la Sra. Ivette Robles, la Sociedad Legal de Gananciales compuesta por ambos y la Sra. Gladys González Ramos (en conjunto, "parte recurrida") presentaron una *Demanda* sobre impericia médica, daños y perjuicios en contra del Hospital San Antonio, Inc., la doctora Bonilla, el Dr. Oscar I. Laboy, entre otros de nombres desconocidos.[1] Posteriormente, el 25 de abril de 2024, presentaron una *Demanda Enmendada*, para incluir a SIMED como parte codemandada.[2] En esencia, esbozaron que el 10 de febrero de 2023, la Sra. Lyzbeth González acudió al Hospital San Antonio para realizarse una intervención quirúrgica de histerectomía supra cervical, bajo los servicios de la doctora Bonilla. Alegaron que, durante la intervención quirúrgica surgieron complicaciones, lo que le provocó una encefalopatía hipóxica y un daño cerebral permanente e irreversible. Por ello, arguyeron que, debido a la negligencia de las partes demandadas reclamaron daños y perjuicios.

Luego de varias incidencias procesales, el 15 de julio de 2024, la parte peticionaria presentó una *Moción de Desestimación al amparo de la inmunidad establecida en la Sección 4105 del Título 26 de LPRA*.[3] Mediante esta, esbozó que la doctora Bonilla realizó el

---

[1] *Demanda*, anejo II, págs. 8-20 del apéndice del recurso.
[2] *Demanda Enmendada*, anejo III, págs. 21-30 del apéndice del recurso.
[3] *Moción de Desestimación al amparo de la inmunidad establecida en la Sección 4105 del Título 26 de LPRAI,* anejo V, págs. 45-50 del apéndice del recurso.

procedimiento en las facilidades del Hospital San Antonio en Mayagüez, donde tiene el privilegio de médico en obstetricia y ginecología. Sostuvo que conforme al Artículo 41.050 del Código de Seguros de Puerto Rico, 26 LPRA sec. 4105, estaba cobijada por la inmunidad que establece en los casos de impericia médica. Así pues, al no existir una causa de acción válida en su contra, procedía la desestimación de la demanda.

En respuesta, el 23 de agosto de 2024, la parte recurrida presentó una *Moción en Oposicion a Solicitud de Desestimación de las codemandadas Dra. Mabel Bonilla Rodríguez y SIMED*.[4] Sostuvo que, la doctora Bonilla no era empleada ni contratista del Hospital San Antonio, sino que únicamente ostentaba privilegios en dicho Hospital. Asimismo, indicó que la parte peticionaria no anejó un contrato suscrito entre la doctora y el Hospital San Antonio, sino que únicamente acompañó el contrato suscrito entre ella y la Corporación Hospital San Antonio, Inc. De otra parte, adujo que la misma controversia había sido atendida por este Foro en el caso KLCE202201006, donde un panel hermano confirmó la decisión del foro recurrido, en la cual denegó la moción de desestimación. Por lo tanto, sostuvieron que procedía denegar la desestimación de la demanda e imponer sanciones económicas.

El 10 de septiembre de 2024, la parte peticionaria presentó una réplica a la moción en oposición.[5] En síntesis, arguyó que la disposición de ley que brinda la

---

[4] *Moción en Oposicion a Solicitud de Desestimación de las codemandadas Dra. Mabel Bonilla Rodríguez y SIMED*, anejo VI, págs. 64-70 del apéndice del recurso.

[5] *Réplica a Moción en Oposición a Moción de Desestimación al amparo de la inmunidad establecida en la Sección 4105 del Título 26 de LPRA*, anejo VII, págs. 82-86 del apéndice del recurso.

inmunidad a los médicos en instituciones hospitalarias es la *Ley de Pleitos contra el Estado*, 32 LPRA sec. 3077. A su vez, sostuvo que la Ley Núm. 99 del año 2017, enmendó el Artículo 41.050 de la Ley Núm. 77-1957, para aclarar que la inmunidad establecida a los empleados y contratistas del Estado Libre Asociado de Puerto Rico (ELA) se extendía a los médicos en instituciones aun cuando no fueran empleados, pero que laboraran por un contrato de servicios profesionales. Asimismo, reiteró que tiene un contrato de servicios profesionales con el Hospital San Antonio Inc., quien es el operador y administrador del Hospital San Antonio de Mayagüez, y es propiedad del Municipio de Mayagüez. Finalmente, arguyó que el caso al que hacen referencia los recurridos, el médico en dicho caso, no tenía un contrato de Servicios Profesionales, a diferencia de la doctora Bonilla que sí firmó un contrato. Por ello, procedía la desestimación del caso de autos.

El 11 de septiembre de 2024, la parte recurrida presentó una dúplica a la réplica.[6] Mediante esta, esbozó que la inmunidad a los empleados y contratistas del Hospital San Antonio de Mayagüez, entre otras instituciones, que confiere la *Ley de Pleitos contra el Estado*, es para empleados y contratistas del Municipio de Mayagüez, dueño del hospital, cuyo contratista en este caso es la Corporación Hospital San Antonio de Mayagüez y no la doctora Bonilla. Por ello, sostuvo que, la doctora Bonilla no era empleada ni contratista independiente del Municipio. Así pues, reiteró que la

---

[6] *Dúplica a Réplica a Moción en Oposición a Solicitud de Desestimación de las codemandadas Dra. Mabel Bonilla Rodríguez y SIMED*, anejo VIII, págs. 106-109 del apéndice del recurso.

inmunidad conferida en el Artículo 41.050 del Código de Seguros, no aplica a la doctora Bonilla.

Evaluadas las mociones presentadas por las partes, el 11 de marzo de 2025, el foro primario notificó la *Resolución* recurrida.[7] Mediante la cual, declaró *No Ha Lugar* a la solicitud de desestimación sometida por la parte peticionaria, toda vez que no estaba cobijada por la inmunidad establecida en el Artículo 41.050 del Código de Seguros de Puerto Rico. El foro recurrido determinó lo siguiente:

> Surge del expediente judicial que, la Dra. Bonilla Rodríguez tiene un contrato de servicios profesionales con la corporación Hospital San Antonio, Inc., entidad que opera y administra el hospital bajo un contrato con el Municipio de Mayagüez, propietario de la instalación médica. Sin embargo, dicho contrato no establece que la Dra. Bonilla Rodríguez es "empleada" o "contratista" del Municipio de Mayagüez, sino únicamente de la corporación privada Hospital San Antonio, Inc.

Inconforme con tal determinación, el 9 de abril de 2025, la parte peticionaria presentó el recurso de *certiorari* que nos ocupa. Mediante el cual le adjudica al foro primario la comisión del siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE A LA CODEMANDADA, DRA. MABEL BONILLA RODRÍGUEZ NO LA COBIJA LA INMUNIDAD ESTABLECIDA EN EL ART. 41.050 DEL CÓDIGO DE SEGUROS, 26 L.P.R.A. 4105, POR NO TENER CONTRATO DE SERVICIOS PROFESIONALES CON EL MUNICIPIO DE MAYAGÜEZ.

El 15 de abril de 2025, la parte recurrida presentó su *Oposicion a Expedición del Auto Certiorari*.

Con el beneficio de las comparecencias de las partes, procedemos a resolver.

---

[7] *Resolución*, anejo I, págs. 1-7 del apéndice del recurso.

**II.**

**-A-**

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001). La determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia*, *supra*, pág. 91. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho". *Íd*.

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, señala los criterios que para ello debemos considerar, estos son: 4 LPRA XXII-B, R.40.

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**–B–**

El Artículo 41.050 del Código de Seguros de Puerto Rico, Ley Núm. 77 del 19 de junio de 1957, según enmendada, 26 LPRA sec. 4105, establece la inmunidad conferida a los médicos que son empleados del Estado Libre Asociado de Puerto Rico, sus dependencias e instrumentalidades, con respecto a pleitos de impericia profesional relacionados con el desempeño de su labor. *Rodríguez Ruiz v. Hosp. San Jorge,* 169 DPR 850 (2007), págs. 855-856. A su vez, exime a ciertos profesionales de la salud de tener que mostrar la obtención de un seguro de responsabilidad y extiende a distintas instituciones e individuos los límites de

responsabilidad civil aplicables al ELA. 26 LPRA sec. 4105.

Dicha legislación ha sido enmendada en un sinnúmero de ocasiones, actualmente y en lo pertinente al caso, dispone lo siguiente:

> **Ningún profesional de la salud (empleado o contratista), podrá ser incluido como parte demandada en una acción civil de reclamación de daños por culpa o negligencia por impericia profesional ("*malpractice*") causada en el desempeño de su profesión, mientras dicho profesional actúe en cumplimiento de sus deberes y funciones, incluidas las docentes, como empleados del Estado Libre Asociado de Puerto Rico, sus dependencias, instrumentalidades, el Centro Compresivo de Cáncer de la Universidad de Puerto Rico y los municipios. Tampoco podrá ser incluido profesional de salud alguno, ya sea empleado o contratista, por el desempeño de su profesión en el cumplimiento de sus deberes y funciones, incluidas las docentes, del Hospital San Antonio de Mayagüez,** en el Centro Médico de Mayagüez-Hospital Ramón Emeterio Betances-, su Centro de Trauma y sus dependencias ni a los profesionales de la salud que prestan servicios a pacientes referidos por la Corporación del Fondo del Seguro del Estado. Iguales límites aplicarán a los estudiantes y residentes que utilicen las salas quirúrgicas, de emergencias, de trauma y las instalaciones de los intensivos neonatales y pediátricos del Centro Médicos de Mayagüez-Hospital Ramón Emeterio Betances- como taller docente y de investigación universitaria. En estos casos se sujetará a los intensivistas y pediatras de los intensivos neonatales; y los gineco-obstetras y cirujanos del Centro Médico de Mayagüez-Hospital Ramón Emeterio Betances- y al Centro de Trauma correspondiente a los límites de responsabilidad que la Ley Núm. 104 de 29 de junio de 1995, según enmendada, establece para el Estado en similares circunstancias.
>
> Se aplicarán los límites de responsabilidad que la Ley Núm. 104 del 29 de junio de 1955, según enmendada, impone al Estado Libre Asociado de Puerto Rico, en similares circunstancias, en los siguientes escenarios:
>
> […]

> (x) **al Hospital San Antonio independientemente sea operado o administrado por una institución privada, cuando recaiga sentencia en su contra por actos u omisiones constitutivos de culpa o negligencia por impericia profesional, médica, y/u hospitalaria ("*malpractice*"), incluyendo, la cometida por sus empleados y los profesionales de la salud, (empleado o contratista, incluyendo médico con privilegios) en el desempeño de su profesión bajo el cumplimiento de sus deberes y funciones y mientras provean servicios de salud en el Hospital San Antonio.** 26 LPRA sec. 4105. (Énfasis nuestro).

Como vemos, el Artículo tiene el propósito de eximir de responsabilidad por impericia profesional a los profesionales de salud que prestan servicios en las instituciones del Estado Libre Asociado de Puerto Rico, sus dependencias o instrumentalidades y los municipios, es decir, en el sector público.

En su origen el Artículo 41.050, *supra*, sólo cubría a los profesionales de salud que eran empleados del sector público en puestos de carrera o confianza, siempre que el daño fuese ocasionado en el desempeño de sus funciones profesionales como empleados de esa entidad gubernamental. *Flores Román v. Ramos González*, 127 DPR 601, 606-607 (1990). De igual forma, concedía inmunidad a los médicos que, en adición a su trabajo con el Estado, ejercen su práctica privada, mientras actuaran en el cumplimiento de su deber como empleados del Estado. *Íd.*; *Lind Rodríguez v. ELA*, 112 DPR 67, 68-69 (1982).

Para ello, la doctrina jurisprudencial establece que para ser acreedor de la inmunidad tienen que estar presentes los siguientes requisitos: (1) tiene que ser un profesional en el cuidado de la salud; (2) los daños ocasionados por su impericia tienen que haber sido

causados en el desempeño de su profesión; y (3) tiene que haber actuado en el cumplimiento de sus deberes y funciones como empleado del ELA, sus dependencias, instrumentalidades y municipios. *Flores Román v. Ramos González*, supra, pág. 606. Dicha inmunidad, por regla general, no se extiende a los médicos que trabajan como contratistas independientes en el sector público. *Flores Román v. Ramos González,* supra, págs. 607-608. Por ello resulta necesario determinar cuándo un profesional de salud es realmente un contratista independiente. Por lo tanto, se debe considerar cada contrato separadamente de forma tal que al estudiar los términos de este se pueda determinar si existe una relación contractual entre la agencia y la persona o si, por el contrario, se desprende que en realidad la persona ocupa un empleo en la agencia o la instrumentalidad en la que se desempeña. *Íd.*, pág. 608.

El criterio rector para precisar la naturaleza de la relación entre el contratista independiente y el Estado para determinar si está cubierto por la inmunidad concedida por ley es la naturaleza, extensión y grado de control que se reserva el patrono sobre la ejecución del trabajo. *Flores Román v. Ramos González*, supra, pág. 607. En el caso particular de los médicos deben considerarse, además, los siguientes factores: (1) la forma de pago por los servicios rendidos; (2) la dependencia hacia el principal en cuanto al uso de equipo y facilidades; (3) si se requiere un seguro de responsabilidad profesional; y (4) el grado de juicio que se le permita al contratista independiente al proveer sus servicios. *Íd.*, pág. 609. De determinarse

que no es un contratista independiente le cubrirá la inmunidad del Artículo 41.050, *supra*.

No obstante a lo anterior, el Artículo 41.050, *supra*, fue enmendado por la Ley Núm. 228-2004, para extender la inmunidad a instituciones médicas del sector público que estén administradas por empresas privadas y para extender la inmunidad a ciertos contratistas independientes cuando prestan servicios a las instituciones médico-hospitalarias propiedad del ELA, sus dependencias, instrumentalidades o municipios. Mediante las enmiendas realizadas al Artículo 41.050, *supra*, el legislador ha extendido la inmunidad concedida a determinadas especialidades independientemente de la relación contractual como empleado o contratistas independientes, siempre y cuando dichas funciones se lleven a cabo en las instituciones médico-hospitalarias cobijadas por el Artículo. Por tanto, el legislador extendió la inmunidad a los gineco-obstetras, cirujanos y profesionales de salud en trauma cuando éstos prestaran sus servicios en la institución médico-hospitalaria propiedad del ELA, sus dependencias, instrumentalidades y/o municipios independientemente de si eran empleados o contratistas independientes. Véase, *Exposición de Motivos*, Ley Núm. 228-2004; *Rodríguez Ruiz v. Hospital San Jorge*, 169 DPR 850 (2007).

De otra parte, la Ley Núm. 278-2012, fue otra de las leyes que enmendó el precitado Artículo 41.050 del Código de Seguros, *supra*, y en su *Exposición de Motivos* indica lo siguiente:

> El Hospital San Antonio es una institución hospitalaria terciaria que ofrece servicios de salud especializados. Los servicios que brinda la mencionada institución son de naturaleza pediátrica y ofrece igualmente

servicios de obstetricia y ginecología. Por más de doce (12) años el Hospital San Antonio ha sido la única institución del área oeste en mantener intensivos neonatales y pediátricos, conocidos como PICU y NICU. **El Hospital San Antonio, al igual que el Centro Médico de Mayagüez, también conocido como Hospital Ramón Emeterio Betances, es propiedad del Municipio de Mayagüez.** En su operación el Hospital San Antonio atiende madres y niños de toda el área noroeste, centro y oeste de nuestra Isla. Es importante señalar que, más del 80% de los pacientes que acuden al Hospital San Antonio procurando servicios son usuarios de la Reforma de Salud.

**Según expresara el Municipio de Mayagüez en su Ordenanza Número 53, Serie 2010-2011, tanto el Centro Médico de Mayagüez como el Hospital San Antonio forman parte integral de su sistema de salud.** Por ende, ha establecido el Municipio una estructura para que las mencionadas instituciones funcionen de forma ordenada y armonizada con los intereses de éste y el bienestar de sus ciudadanos.

El 27 de junio de 2011 fue aprobada la Ley Núm. 103, la cual enmienda el Artículo 41.50 del "Código de Seguros de Puerto Rico". El mencionado estatuto extendió al Centro Médico de Mayagüez, Hospital Ramón Emeterio Betances, los límites de responsabilidad civil por impericia a que está sujeto el Estado Libre Asociado de Puerto Rico. En dicha enmienda no se incluyó al Hospital San Antonio a pesar de la importante participación que tiene la institución en el sistema de salud no sólo de Mayagüez, sino para el área oeste, noroeste y centro de Puerto Rico. **No extender al Hospital San Antonio los límites de responsabilidad civil por impericia médica al que está sujeto el Centro Médico de Mayagüez podría dislocar el sistema de salud que tiene el Municipio de Mayagüez al ser propietario de ambas instituciones, con diferentes sistemas de responsabilidad civil.** Por lo antes expuesto, está Asamblea Legislativa entiende necesario extender al Hospital San Antonio de Mayagüez los beneficios de los límites de responsabilidad civil por impericia a que está sujeto el Estado Libre Asociado de Puerto Rico. (Énfasis nuestro).

Dicha legislación "atiende de manera muy particular las instituciones, individuos y circunstancias en que será aplicable la referida inmunidad" en acciones de daños y perjuicios por impericia médica. *Rodríguez*

*Figueroa v. Centro de Salud Mario Canales Torresola*, 197 DPR 876, 889-890 (2017). Así pues, el concepto de inmunidad se traduce en una "inexistencia de causa de acción", lo cual significa que su beneficiario "no puede ser objeto de un litigio". *Íd.*, pág. 884. A pesar de que otras partes del referido estatuto hacen referencia a otro tipo de lenguaje (alusivo, por ejemplo, a "límites de responsabilidad"), ello no tiene el efecto de eliminar o hacer desaparecer el lenguaje que claramente establece su inmunidad. *Rodríguez Ruiz v. Hosp. San Jorge,* supra, págs. 859-860; *Flores Román v. Ramos González*, supra, pág. 606.

Así las cosas, el Tribunal Supremo ha sido enfático en que la inmunidad del Artículo 41.050, *supra*, cobija a los profesionales de servicios de salud en acciones de daños por culpa o negligencia por impericia médica cuando éstos prestan servicios médicos en instalaciones del ELA, sus dependencias, instrumentalidades o el municipio independientemente de que éstas sean administradas por una entidad privada. Dicha inmunidad aplica a dos grupos: los empleados y los contratistas independientes que con especialidad en gineco-obstetras, cirugía general y trauma. En el caso de contratistas independientes que no sean especialistas en obstetricia, ortopedia, cirugía general y trauma será necesario analizar: (1) la forma de pago por los servicios rendidos; (2) la dependencia hacia el principal en cuanto el uso de equipo y facilidades; y (3) si se requiere un seguro de responsabilidad profesional, para determinar que la relación del médico con el gobierno no es de contratista independiente en cuyo caso está

cubierto por la inmunidad del Código de Seguros. *Rodríguez Ruiz v. Hospital San Jorge*, supra, pág. 685.

**III.**

En el caso de autos, la parte peticionaria alega que incidió el foro primario al denegar su moción de desestimación al concluir que no le cobijaba la inmunidad establecida en el Artículo 41.050 del Código de Seguros, *supra*, por no tener un contrato con el Municipio de Mayagüez. Sostiene que, firmó un contrato de servicios profesionales de médico con el Hospital San Antonio, Inc., para prestar servicios de obstetricia y ginecología a pacientes que no tuvieran médicos para dicho servicio, así como participar en el programa de guardias *unnattached*, entre otras funciones que surgen del contrato. Asimismo, expone que la legislación no requiere que haya un contrato de servicios profesionales directamente con el Municipio. Reitera que, el contrato que suscribió con la corporación Hospital San Antonio Inc. es una organización conforme a las leyes del ELA, además que opera y administra al Hospital San Antonio de Mayagüez y sus facilidades bajo el contrato que tiene con el Municipio de Mayagüez, dueño de la institución.

Por su parte, los recurridos mencionan que un panel hermano de este Tribunal, atendió una controversia similar donde determinaron que el hecho de que un médico ostentara privilegios para atender pacientes del Hospital San Antonio, no lo convertía automáticamente en empleado o contratista independiente para ser cobijado por la inmunidad del Artículo 41.050 del Código de Seguros, *supra*, al no tener una relación contractual con la facilidad hospitalaria. Por ello, sostienen que la relación contractual es entre la doctora Bonilla y la

Corporación San Antonio, Inc., consecuentemente, no es empleada ni contratista del Municipio.

Conforme a la normativa antes expuesta, ningún profesional de la salud sea empleado o contratista, puede ser incluido como parte demandada en una acción civil de reclamaciones de daños por culpa o negligencia por impericia profesional causada en el desempeño de su profesión, mientras dicho profesional actúe en cumplimiento de sus deberes y funciones del Hospital San Antonio de Mayagüez. 26 LPRA secc. 4105. A su vez, dicha legislación establece que los límites de responsabilidad que la Ley Núm. 104-1955 que impone al ELA, aplicará al Hospital San Antonio independientemente sea operado o administrado por una institución privada. *Íd*.

De igual forma, nuestro Tribunal Supremo ha sido enfático en que la inmunidad del Artículo 41.050, *supra*, cobija a los profesionales de servicios de salud en acciones de daños por culpa o negligencia por impericia médica cuando éstos prestan servicios médicos en instalaciones del ELA, sus dependencias, instrumentalidades o el municipio, independientemente de que éstas sean administradas por una entidad privada. Dicha inmunidad aplica a dos grupos: los empleados y los contratistas independientes que sean especialistas en gineco-obstetras, cirujanos y trauma. Así que, los médicos que trabajen para el Estado o para una entidad del Estado administrada por una entidad privada en estas áreas, siempre estarán cubiertos por la inmunidad, sean contratistas independientes o no. *Rodriguez Ruiz v. Hosp. San Jorge*, supra.

Al examinar los documentos presentados por las partes, se desprende que, la doctora Bonilla tiene un *Contrato de Servicios Profesionales de Médico* con el Hospital San Antonio Inc., como médico especialista en el área de obstetricia y ginecología. Dicho *Contrato* establece que el Hospital San Antonio Inc., es una corporación debidamente organizada conforme a las leyes del ELA, que opera y administra el Hospital San Antonio de Mayagüez y sus facilidades e instalaciones bajo el contrato entre el Hospital San Antonio, Inc. y el Municipio de Mayagüez.

Al examinar el recurso, surge que en el momento en que la doctora Bonilla intervino con la Sra. Lyzbeth González lo hizo mientras daba cumplimiento a sus deberes y funciones como contratista de la institución propiedad del Municipio de Mayagüez. Además, se demuestra que la peticionaria fue contratada para que atendiera a pacientes que no tuvieran médicos para los servicios gineco-obstetras con privilegios en el Hospital; a participar del programa de guardias "*unattached*"; proveer entrenamiento en el Hospital como médico profesor a estudiantes de medicina y residencia; entre otras funciones.

Como corolario de lo anterior, la doctora Bonilla cumple con los criterios que nuestro ordenamiento jurídico ha establecido para ser protegido por la inmunidad estatutaria. Estos son: (1) ser un profesional en el cuidado de la salud; (2) que los daños ocasionados por su impericia deben haber surgido en el desempeño de su profesión; (3) tiene que haber actuado en cumplimiento de sus deberes y funciones profesionales como empleado o contratista. Por lo tanto,

independientemente de que la peticionaria sea empleada o contratista, por estar dentro de las especialidades cubiertas por la Ley Núm. 228, *supra*, es decir, por ser médico especialista en el área de obstetricia y ginecología, está cubierta por la inmunidad del Artículo 41.050 del Código de Seguros, *supra*.

Por consiguiente, erró el foro primario al denegar la desestimación de la doctora Bonilla, y concluir que, al no tener un contrato con el Municipio de Mayagüez, no le cobijaba la inmunidad establecida en el Artículo 41.050 del Código de Seguros, *supra*. Consecuentemente, se desestima la *Demanda* de epígrafe contra la doctora Bonilla y SIMED.

## IV.

Por los fundamentos previamente expuestos, **EXPEDIMOS** el auto solicitado, **REVOCAMOS** la *Resolución* recurrida y desestimamos la *Demanda* contra la Dra. Mabel Bonilla Rodríguez y su aseguradora, SIMED.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones