ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| AIRA QUINTANA LAUREANO<br><br>Recurrida<br><br>v.<br><br>DR. JAFFET SEDA RODRÍGUEZ, DR. LUIS A. BONILLA GONZÁLEZ, DR. ARMANDO J. CRUZADO RAMOS Y OTROS<br><br>Peticionarios | **TA2025CE00666** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Arecibo<br><br>Civil Núm.: AR2020CV00809<br><br>Sobre: Impericia Médica |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico a 5 de diciembre de 2025.

Comparecen ante este foro el Dr. Armando J. Cruzado Ramos (Dr. Cruzado), el Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico Hospitalario (SIMED) y Puerto Rico Medical Defense Insurance Company (PRMD), como aseguradoras del Dr. Cruzado (en conjunto, "parte peticionaria"), y nos solicitan que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo, notificada el 5 de septiembre de 2025. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria Parcial* instada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** expedir el *certiorari* de epígrafe.

**I.**

El 14 de julio de 2020, la Sra. Aira Quintana Laureano (señora Quintana o "la recurrida") presentó una *Demanda* sobre impericia médica y daños y perjuicios, contra el Dr. Jaffet Seda Rodríguez (doctor Seda); el Dr. Luis A. Bonilla (doctor Bonilla); el Dr. Armando J. Cruzado (doctor Cruzado); Mogic Ob-Gyn PSC (MOGIC), Manatí Medical Center (MMC); y sus entidades aseguradoras.[1] Posteriormente, el 5 de mayo de 2021, presentó una *Demanda Enmendada*.[2] En esta, añadió como partes codemandadas a la Dra. Rosalyn Díaz Crescioni (doctora Díaz); Dorado Health, Inc. (entidad también conocida como Manatí Medical Center); Puerto Rico Medical Defense Insurance Company; Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria (SIMED); Medical Protective Company (MedPro); entre otros.

En esencia, la señora Quintana alegó que el 5 de abril de 2019, fue admitida en el MMC con el propósito de practicarle una cesárea y *salpingectomía parcial bilateral*, realizada por el doctor Seda. Expuso que, a los tres días de la intervención, comenzó a tener nauseas, vómitos y dolor; su abdomen se hinchó, generó timpanismo a la percusión, pero no reportó ruido peristáltico. Señaló que, el 8 de abril de 2019, le realizaron una radiografía la cual reflejó una severa distención en el intestino grueso y en la sección central del intestino delgado, así como presencia de aire en la

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Demanda Enmendada*, entrada núm. 47 en SUMAC.

cavidad abdominal. Asimismo, indicó que los resultados de una placa al día siguiente reflejaron:

> […] distensión anormal en el intestino delgado, severa distención en el colon transversal con medida de 14.6cm. Un *CT-Scan* abdominal de ese mismo día reveló dilatación del colon proximal con medida de 11.6cm, y dilatación del colon transverso hasta el ángulo esplénico ("*dilation of the proximal colon measuring 11.6cm and transverse colon up to splenic flexure*"). También reflejó que se difundía y agudizaba la falta de movimiento intestinal en la porción inicial del intestino grueso con dilatación en el intestino delgado ("*diffuse ileus worsening at the cecum with mildly dilated small bowel*"). El cuadro clínico también reportó colapso estomacal, aplicándose un tubo nasogástrico ("*stomach is described as collapsed with NG tube*").

Por ello, arguyó que el 9 de abril de 2019, contactó al doctor Cruzado, quien evaluó el caso el 10 de abril de 2019, y reposicionó el tubo nasogástrico y practicó a la recurrida a una estimulación rectal. No obstante, sostuvo que no hubo mejoría y el 12 de abril de 2019, el doctor Bonilla practicó de emergencia una colonoscopia descompresiva, constatándose una pseudo-obstrucción en el secum ("*pseudo obstruction up to the secum*"). Así pues, el 14 de abril de 2019 fue evaluada por el doctor Cruzado, quien reportó que continuaba con distención abdominal.

Mencionó que, el 19 de abril de 2019, su cuadró clínico deterioró dramáticamente teniendo que ser reevaluada de emergencia, y según el CT-Scan abdominal realizado, reflejó un cuadro compatible con perforación de colón. Consecuentemente, el 21 de abril de 2019, fue intervenida para realizarle una colectomía total con ileostomía y lavado peritoneal ("*total colectomy with end ileostomy and lavage of the abdominal cavity*".)

En cuanto a los actos de impericia médica, alegó que los codemandados fueron negligentes al no obtener de su parte el consentimiento informado para las intervenciones, lo que provocó que no tuviera conocimiento de los riesgos, beneficios o alternativas del tratamiento. Sostuvo que, no le proveyeron el cuidado médico aceptado por la comunidad médica, incumpliendo así con los estándares de una buena práctica de la medicina. Por ello, solicitó fuera declarada con lugar la demanda, condenando a los codemandados a pagar solidariamente las cantidades solicitadas, así como las costas, gastos y honorarios de abogado.

El 22 de septiembre de 2020, el doctor Cruzado presentó su *Contestación a Demanda*.[3] No obstante, el 2 de julio de 2021, la parte peticionaria presentó su *Contestación a Demanda Enmendada*.[4] Finalmente, el 7 de julio de 2021, Puerto Rico Medical Defense, como aseguradora del doctor Cruzado presentó su *Contestación a Demanda Enmendada*.[5] En estas, negaron la mayoría de las alegaciones, y solamente afirmaron que el tratamiento médico brindado por el doctor Cruzado estuvo enmarcado dentro de los estándares de la mejor práctica de la medicina. Por lo que, solicitaron se declarara *No Ha Lugar* la demanda enmendada.

Luego de varias incidencias procesales, el 9 de mayo de 2025, MMC y MedPro, presentaron una *Solicitud de Sentencia Sumaria Parcial*.[6] Argumentaron que, el MMC estaba plenamente protegido por el régimen establecido

---

[3] *Contestación a Demanda*, entrada núm. 25 en SUMAC.
[4] *Contestación a Demanda Enmendada*, entrada núm. 75 en SUMAC.
[5] *Contestación a Demanda Enmendada*, entrada núm. 78 en SUMAC.
[6] *Solicitud de Sentencia Sumaria Parcial*, entrada núm. 194 en SUMAC.

en la Ley Núm. 136-2006, según enmendada, mejor conocida como *Ley de los Centros Médicos Académicos Regionales de Puerto Rico*, 24 LPRA sec. 10031 *et seq* (Ley Núm. 136-2006)*.* Señalaron que, conforme a la Ley y a la jurisprudencia aplicable, MMC estaba cobijado por el límite de responsabilidad y la inmunidad funcional que protege a los profesionales en formación que actúan en su función académica. En este, reconocieron que durante las fechas del 5 de abril de 2019 al 8 de mayo de 2019, médicos residentes y estudiantes de medicina participaron, junto con los médicos asistentes, en la atención y cuidado clínico brindado a la señora Quintana mientras esta estuvo hospitalizada. Por ello, resaltaron que las actuaciones del componente hospitalario fueron realizadas como parte del programa educativo conforme establece la Ley Núm. 136-2006, *supra*. Así las cosas, solicitaron que se declarara ha lugar la sentencia sumaria.

De otra parte, el 15 de mayo de 2025, la parte peticionaria presentó una *Moción Solicitando se Dicte Sentencia Sumaria Parcial sobre los Límites aplicables al Amparo de la Ley 136 de 2006*.[7] De igual forma, arguyeron que durante el tratamiento médico recibido por la señora Quintana en el MMC, participaron en el tratamiento estudiantes y médicos en entrenamiento, al cual está adscrito el doctor Cruzado, como profesor en

---

[7] *Moción Solicitando se Dicte Sentencia Sumaria Parcial sobre los Límites aplicables al Amparo de la Ley 136 de 2006*, entrada núm. 196 en SUMAC.
En la moción, MMC señaló que "desde el año 2013, el Hospital [MMC] mantiene un acuerdo de afiliación con la Escuela de Medicina de Ponce, y ofrece un programa de residencia en Medicina de Familia acreditado por el *Accreditation Council for Graduate Medical Education* (ACGME). A su vez, el Hospital forma parte de la Junta del CMAR del Suroeste, conforme al Reglamento Núm. 7824 debidamente registrado ante el Departamento de Estado y vigente al momento de los hechos reclamados."

cirugía, y sobre el cual le es aplicable los límites de responsabilidad de la Ley Núm. 136-2006, *supra*.

El 30 de junio de 2025, la recurrida presentó su *Oposicion a Solicitud de Sentencia Sumaria Parcial*.[8] En esta, sostuvo que existían hechos esenciales en controversia que impedían se dictara sentencia sumaria. Asimismo, esbozó que la parte codemandada presentó documentos que no fueron producidos durante el descubrimiento de prueba, por lo que, era documentación inadmisible en evidencia. Por otra parte, arguyó que MMC no solicitó autorización para enmendar sus alegaciones, por lo que, la aplicabilidad de los límites de responsabilidad bajo la Ley Núm. 136-2006, *supra*, nunca había sido levantado como defensa afirmativa de MMC. Por ello, solicitó fuera denegada la moción de sentencia sumaria o en la alternativa, se acumulara dicha materia para que fuera adjudicada en el juicio.

En igual fecha, la señora Quintana presentó su *Oposicion a Solicitud de Sentencia Sumaria Parcial Presentada por el Codemandado Dr. Cruzado Ramos*.[9] En esencia, adujo que el doctor Cruzado falló en establecer si a la fecha en que ofreció los servicios rendidos a la recurrida, el MMC era un centro con afiliación vigente al Centro Médico Académico Regional (CMAR). A su vez, que había fallado en establecer que su filiación y su nombramiento como profesor asistente, se encontraban vigentes a la fecha de los servicios. Por ello, que no procedía se dictara sentencia sumaria.

---

[8] *Oposicion a Solicitud de Sentencia Sumaria Parcial*, entrada núm. 203 en SUMAC.
[9] *Oposicion a Solicitud de Sentencia Sumaria Parcial Presentada por el Codemandado Dr. Cruzado Ramos*, entrada núm. 204 en SUMAC.

Evaluadas las mociones, el 5 de septiembre de 2025, el foro primario notificó la *Resolución* recurrida.[10] Mediante esta, declaró *No Ha Lugar* a las mociones de sentencia sumaria presentadas respectivamente por la parte peticionaria. Así pues, en cuanto a la *Solicitud de Sentencia Sumaria Parcial* planteó el siguiente hecho no controvertido:

> 1. El Centro Médico Académico Regional del Suroeste (CMAR) contaba para el momento de los hechos con el Reglamento General Número 7824, con fuerza de ley y vigente desde el 9 de junio de 2008. Véase, *"Solicitud de Sentencia Sumaria Parcial"* [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #5.

No obstante, señaló como hechos esenciales y pertinentes en controversia, los siguientes:

> 1. Al momento de los hechos alegados en la Demanda, el Hospital contaba con un Contrato de Afiliación suscrito con la Universidad de Medicina de Ponce y su Programa de Residencia, vigente desde el 31 de julio de 2019, con una duración inicial de cinco (5) años y renovación automática. Véase, *"Solicitud de Sentencia Sumaria Parcial"* [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #1.
>
> 2. Lo anterior se acredita mediante declaración jurada suscrita por el Dr. Norman Ramírez Lluch, quien actúa como oficial institucional a cargo del sistema académico del Hospital (*"Designated Institutional Officer – DIO"*). Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #2.*
>
> 3. Como DIO del Hospital, el Dr. Norman Ramírez Lluch supervisa las labores realizadas por los directores de programas, médicos asistentes (*attendings*) y otros facultativos, asegurando el cumplimiento de las funciones académicas del taller clínico acreditado en Medicina de Familia. Véase, *"Solicitud de sentencia sumaria parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #3.*

---

[10] *Resolución*, entrada núm. 222 en SUMAC.

4. El programa de residencia del Hospital en Medicina de Familia está acreditado a su vez por el Accreditation Council for Graduate Medical Education (ACGME). Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #4.*

5. Durante el periodo comprendido entre el 5 de abril de 2019 al 8 de mayo de 2019, médicos residentes y estudiantes de medicina participaron activamente, junto con los médicos asistentes, en la atención clínica y cuidado hospitalario que se le brindó a la Demandante mientras esta estuvo hospitalizada en el Hospital. Las actuaciones de todo el componente hospitalario se realizan, conforme se define la actividad de docencia por parte del LCME y ACGME según recoge la Ley 136-2006, como parte del programa educativo bajo la Ley Núm. 136-2006. Véase, *"Solicitud de sentencia sumaria parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #6.*

6. El Hospital ofrece un programa de residencia en Medicina de Familia para estudiantes provenientes de diversas instituciones, incluyendo la Escuela de Medicina de Ponce, la Escuela de Medicina San Juan Bautista, la Escuela de Medicina y Ciencias de la Salud de San Kitts y la Escuela de Medicina de Antigua. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #7.*

7. La Escuela de Medicina de Ponce cuenta con acreditación vigente por el *Liaison Committee on Medical Education (LCME)* para sus programas de residencia. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #8.*

8. A la fecha de los hechos alegados en la Demanda Enmendada (5 de abril de 2019), el Hospital contaba con un número específico de 18 médicos residentes en Medicina de Familia, acreditados por el ACGME. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #9.*

9. Los doctores Gladimar Santiago Cartagena, Indira Martínez Anthony, Alexis Otero Rosado y Maribel Rodríguez González, en su capacidad de residentes del Programa de Medicina de Familia del Hospital, participaron en el tratamiento médico y cuidado hospitalario que se le brindó a la Demandante durante el periodo de su

admisión hospitalaria. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #10.*

10. La Dra. Gladimar Santiago Cartagena, también prestó tratamiento médico a la Demandante bajo un Acuerdo de Subvención. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #11.*

11. La Dra. Indira Martínez Anthony, brindó atención médica a la Demandante durante el periodo de su hospitalización en el Hospital, al amparo de un Acuerdo de Subvención. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #12.*

12. El Dr. Alexis Otero Rosado, prestó tratamiento médico a la Demandante y contaba con un Acuerdo de Subvención para Médicos en Adiestramiento Postgraduado. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #13.*

13. La Dra. Maribel Rodríguez González, prestó tratamiento médico a la Demandante y contaba con un Acuerdo de Subvención para Médicos en Adiestramiento Postgraduado. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #14.*

14. En la Contestación a la Demanda Enmendada presentada por el Hospital, consta como defensa afirmativa que el Hospital está debidamente afiliado al CMAR del Suroeste y, consecuentemente, protegido por las disposiciones de la Ley Núm. 136. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #15.*

15. El Dr. Armando Cruzado, médico tratante de la Demandante, cuenta con un Acuerdo de Afiliación con el CMAR del Suroeste, vigente desde el 15 de febrero de 2018, bajo el rango de profesor asistente. Véase, *"Solicitud de Sentencia Sumaria Parcial" [194], III. Hechos materiales sobre los que no existe controversia real sustancial, #16.*

16. La Demandante, fue evaluada por el Dr. Cruzado en consulta quirúrgica desde el 9

de abril de 2019. Véase, *"Solicitud de Sentencia Sumaria Parcial"* [194], III. *Hechos materiales sobre los que no existe controversia real sustancial, #17.*

17. El 21 de abril de 2019, la Demandante fue intervenida quirúrgicamente mediante laparotomía exploratoria, colectomía subtotal con ileostomía y drenaje peritoneal. Véase, *"Solicitud de Sentencia Sumaria Parcial"* [194], III. *Hechos materiales sobre los que no existe controversia real sustancial, #18.*

18. La relacionada intervención quirúrgica fue realizada por el Dr. Armando Cruzado. Véase, *"Solicitud de Sentencia Sumaria Parcial"* [194], III. *Hechos materiales sobre los que no existe controversia real sustancial, #19.*

19. Durante dicha intervención quirúrgica, así como en el tratamiento clínico anterior y posterior, que el Dr. Cruzado y los demás facultativos del Hospital le brindaron a la Demandante, éstos fueron asistidos por médicos residentes en rotación, incluyendo a las doctoras identificadas en los acápites anteriores, todos adscritos al Programa de Residencia de Medicina de Familia del Hospital. Véase, *"Solicitud de Sentencia Sumaria Parcial"* [194], III. *Hechos materiales sobre los que no existe controversia real sustancial, #20.*

20. La participación del personal facultativo y de los médicos residentes en el tratamiento de la Demandante ocurrió en el curso ordinario de sus funciones educativas y clínicas, conforme a los objetivos del Programa de Residencia en Medicina de Familia del Hospital. Véase, *"Solicitud de Sentencia Sumaria Parcial"* [194], III. *Hechos materiales sobre los que no existe controversia real sustancial, #21.*

21. El tratamiento brindado a la Demandante fue realizado por profesionales que actuaban en cumplimiento de sus deberes docentes y académicos, bajo la estructura del CMAR del Suroeste, conforme al marco normativo de la Ley Núm. 136 de 2006. Véase, *"Solicitud de Sentencia Sumaria Parcial"* [194], III. *Hechos materiales sobre los que no existe controversia real sustancial, #22.*

Mientras que, en cuanto a la *"Moción Solicitando se Dicte Sentencia Sumaria Parcial sobre los Límites*

*Aplicable al Amparo de la Ley 136 De 2006"*, estableció como hechos sobre los cuales no había controversia:

1. La Demanda en el caso de referencia fue presentada el 14 de julio de 2020 por Aira Quintana Laureano, en contra Manatí Medical Center, el Dr. Armando Cruzado, y otros codemandandos incluyendo varias compañías aseguradoras. Véase entrada número 1 al Sistema SUMAC. Posteriormente fue presentada una demanda enmendada. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006"* [196], *Hechos materiales sobre los que no existe controversial real sustancial, #1.*

2. El 22 de septiembre el Dr. Cruzado contestó la demanda. Entre las defensas afirmativas se indicó: "Al Dr. Armando Cruzado le cobijan los límites de responsabilidad en las cuantías monetarias, según establecido en la conocida Ley de Centros Médicos Académicos Regionales de Puerto Rico (CMAR)." Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006"* [196], *Hechos materiales sobre los que no existe controversial real sustancial, #2.*

3. Igual planteamiento hizo el Dr. Cruzado en su contestación a la demanda enmendada sobre las provisiones de CMAR. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006"* [196], *Hechos materiales sobre los que no existe controversial real sustancial, #3.*

4. El Dr. Cruzado es un médico con especialidad cirugía desde el 2007 y se desempeña como tal en Manatí Medical Center desde el 2007. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006"* [196], *Hechos materiales sobre los que no existe controversial real sustancial, #7.*

Sin embargo, señaló como hechos esenciales y pertinentes en controversia, conforme a las mociones presentadas:

1. Manatí Medical Center, al momento de los hechos, contaba con Contrato de Afiliación con la Universidad de Medicina de Ponce con vigencia desde el 20 de junio de 2014. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites*

*aplicable al amparo de la Ley 136 de 2006"* *[196], Hechos materiales sobre los que no existe controversial real sustancial, #4.*

2. La parte codemandada, Manatí Medical Center, es un Centro Médico Académico Regional (CMAR) conforme la define la Ley núm. 136 de 27 de julio de 2006, supra, según enmendada. Véase, "Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006" [196], Hechos materiales sobre los que no existe controversial real sustancial, #5.

3. El CMAR cuenta con un Reglamento Número 7824 que tiene fuerza de ley y está en vigor, titulado Reglamento de La Junta del Centro Médico Académico Regional del Sur-Oeste. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006" [196], Hechos materiales sobre los que no existe controversial real sustancial, #6.*

4. El Dr. Cruzado tiene nombramiento *Ad Honorem* como *"Assitant Professor"* en el Departamento de Cirugía de la Escuela de Medicina en Ponce con fecha de febrero de 2018. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la 136 de 2006" [196], Hechos materiales sobre los que no existe controversial real sustancial, #8.*

5. La Escuela de Medicina de Ponce y el CMAR-SO emitieron Certificación indicando que el Dr. Cruzado es *"Assitant Professor"* de dicha institución desde el febrero de 2018. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006" [196], Hechos materiales sobre los que no existe controversial real sustancial, #9.*

6. El Dr. Armando Cruzado Ramos, cuenta con un acuerdo de afiliación de CMAR desde el febrero 2018, bajo el nombramiento como miembro de la facultad de la Escuela de Medicina de Ponce, bajo el rango de profesor asistente. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006" [196], Hechos materiales sobre los que no existe controversial real sustancial, #10.*

7. La demandante fue atendida por distintos especialistas durante su admisión entre el 5 de abril de 2019 al 8 de mayo de 2019 a saber: Dr. Axel Torres, Dr. William Ramírez Cacho, Dr. Armando Cruzado, Dra. Lorna Malpica, Dr. Néstor Carmona y Dr. Jaffet

Seda entre otros. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006" [196], Hechos materiales sobre los que no existe controversial real sustancial, #11.*

8. La demandante Aira Quintana fue atendida por el Dr. Cruzado en consulta quirúrgica desde el 9 de abril de 2019, subsiguientemente evaluada e intervenida quirúrgicamente el 21 de abril de 2019 mediante una laparotomía exploratoria, con colectomía subtotal con ileostomía y drenaje peritoneal. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006" [196], Hechos materiales sobre los que no existe controversial real sustancial, #12.*

9. El doctor Cruzado fue asistido por distintos médicos internos o residentes en rotación durante la admisión de la demandante entre el 5 de abril de 2019 al 8 de mayo de 2019. Véase, *"Moción solicitando se dicte sentencia sumaria parcial sobre los límites aplicable al amparo de la Ley 136 de 2006" [196], Hechos materiales sobre los que no existe controversial real sustancial, #13.*

Así pues, concluyó que persistían controversias de hechos que impedían dictarse una sentencia por la vía sumaria.

En desacuerdo, el 22 de septiembre de 2025, la señora Quintana presentó una *Moción de Reconsideración*.[11] Mediante la cual, señaló que el foro recurrido no atendió dos señalamientos que realizó en su oposición a la sentencia sumaria, estos son:

(a) que ciertos documentos que se acompañaron a las mociones de sentencia sumaria no fueron producidos durante el descubrimiento de prueba, lo cual tornaba los mismos en inadmisibles, y; (b) que la codemandada Manatí Medical Center y su aseguradora, no habían presentado solicitud de autorización para enmendar sus alegaciones para presentar como defensa la aplicación de la Ley 136-2006.

---

[11] *Moción de Reconsideración*, entrada núm. 238 en SUMAC.

Evaluada la moción, el 24 de septiembre de 2025, el foro primario emitió y notificó una *Resolución*, en la que declaró *Ha Lugar* la moción de reconsideración, exclusivamente para aclarar los dos aspectos.[12]

Inconformes, el 23 de octubre de 2025, la parte peticionaria presentó el recurso de epígrafe, en el cual planteó los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, QUE AMERITA SU REVISIÓN Y REVOCACIÓN AL NEGARSE A APLICAR LAS DISPOSICIONES DE LA LEY 136-2006 EN EL PRESENTE CASO.
>
> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, QUE AMERITA SU REVISIÓN Y REVOCACIÓN AL DECLARAR NO HA LUGAR A LA SOLICTUD DE SENTENCIA SUMARIA PARCIAL Y DETERMINAR QUE EXISTE CONTROVERSIA QUE NO PERMITE EXPEDIR LA SENTENCIA SUMARIA PARCIAL SOLICITADA.

El 27 de octubre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida el término de quince (15) días, contados desde la fecha de presentación del recurso, para que se expresara sobre los méritos del recurso de epígrafe.

Luego de una solicitud de prórroga, el 17 de noviembre de 2025, la señora Quintana presentó su *Memorando en Oposición a la Expedición del Auto*.

Contando con la comparecencia de las partes, procedemos a atender el recurso de *certiorari*.

## II.

### -A-

El recurso de *certiorari* permite a un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. *McNeil Healthcare*

---

[12] *Resolución*, entrada núm. 240 en SUMAC.

*v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *800 Ponce de León v. AIG,* 205 DPR 163 (2020). La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *McNeil Healthcare v. Mun. Las Piedras I*, supra; *Scotiabank v. ZAF Corp et al.*, 202 DPR 478 (2019). La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." *800 Ponce de León v. AIG*, supra. Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales,
> (2) en asuntos relacionados a privilegios evidenciarios,
> (3) en casos de anotaciones de rebeldía,
> (4) en casos de relaciones de familia,
> (5) en casos revestidos de interés público, o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. *McNeil Healthcare v. Mun. Las Piedras I*, supra.

La revisión de un recurso de *certiorari* no se da en el vacío o en ausencia de otros parámetros. *McNeil Healthcare v. Mun. Las Piedras I*, supra, pág. 404; *800 Ponce de León v. AIG*, supra. Para ello, la Regla 40 de nuestro Reglamento, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42 establece ciertos criterios que se toman en consideración al evaluar si se debe expedir un recurso de *certiorari,* estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los criterios previamente transcritos pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

Un *certiorari* solo habrá de expedirse si, al menos, uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de

alguno de los criterios contenidos en la misma, se requiere nuestra intervención. De no ser así, procede que nos abstengamos de expedir el auto solicitado, de manera que se continúen los procedimientos del caso sin mayor dilación en el foro de primera instancia.

-B-

En nuestro ordenamiento, el mecanismo de sentencia sumaria procura, ante todo, aligerar la adjudicación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo. *Rodríguez García v. UCA*, 200 DPR 929 (2018). Este mecanismo, está instituido en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, y su función esencial es el permitir que, en aquellos litigios de naturaleza civil, una parte pueda mostrar, previo al juicio, que tras las partes contar con la evidencia que ha sido debidamente descubierta, no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. *Rodríguez Méndez, et als v. Laser Eye,* 195 DPR 769 (2016).

La solicitud de sentencia sumaria puede ser interpuesta por cualquiera de las partes que solicite un remedio por medio de una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2. Por consiguiente, se dictará sentencia sumaria, si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a

cualquier declaración jurada que se presente, si alguna, demostrasen que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que; como cuestión de derecho, procediese hacerlo. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); *SLG Zapata-Rivera v. JF Montalvo,* 189 DPR 414 (2013).

En cuanto a los hechos esenciales y pertinentes a los que se refieren el precitado cuerpo de Reglas, son los que se conocen como hechos materiales. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. Por ello, la controversia deberá ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1; *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).

Ahora bien, cuando se presente una moción de sentencia sumaria y se sostenga en la forma que establece la Regla 36 de Procedimiento Civil, *supra*, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones; sino que dicha parte estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra, si procede. Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c). Por tanto, el oponente deberá controvertir la prueba presentada con evidencia sustancial y no podrá

simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 66 (2018).

Quiere decir que, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. *Ramos Pérez v. Univisión,* supra, pág. 215. Si el oponente no controvierte los hechos propuestos de la forma en que lo requiere la Regla aplicable, tales hechos se podrán considerar como admitidos y se dictará la sentencia en su contra, si procediese. *Roldán Flores v. M. Cuebas, Inc.,* supra. De igual forma, si la parte contraria no presenta su contestación a la sentencia sumaria en el término reglamentario provisto, se entenderá que la moción de sentencia sumaria quedó sometida para la consideración del tribunal. Regla 36.3 de Procedimiento Civil, *supra.*

Por último, es preciso recordar que nuestro Máximo Foro ha dispuesto que, como Tribunal de Apelaciones, nos encontramos en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. *Meléndez González et al. v M. Cuebas,* 193 DPR 100, 122 (2015). A tales efectos, nuestra revisión será una *de novo* y el análisis que realizaremos se regirá por las disposiciones contenidas en la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa.

Por ello, de entender que procede revocar una sentencia sumaria, debemos indicar cuáles hechos esenciales y pertinentes están en controversia, e igualmente decir cuáles están incontrovertidos. Por el contrario, si encontramos que los hechos materiales,

realmente están incontrovertidos, nuestra revisión se limitará a revisar *de novo* si procedía en derecho su concesión. Es decir, si el Tribunal de Primera Instancia aplicó correctamente el derecho o no. *Meléndez González et al. v M. Cuebas*, supra, págs. 118-119.

-C-

La *Ley de los Centros Médicos Académicos Regionales de Puerto Rico*, Ley Núm. 136 de 27 de julio de 2006, según enmendada, 24 LPRA sec. 10031 *et seq.* (Ley Núm. 136-2006)*,* creó los Centros Médicos Regionales de Puerto Rico, con el fin de fortalecer y desarrollar los programas para la educación de los profesionales de la salud, la investigación clínica, epidemiológica y socio médica en Puerto Rico. El propósito de estos Centros es ofrecer servicios de salud de alta calidad y promulgar el desarrollo de la docencia, la investigación y servicios de salud en el país. Véase, *Exposición de Motivos* de la Ley Núm. 136-2006.

En lo pertinente, la referida Ley extiende las limitaciones impuestas en la Ley Núm. 104 de 29 de junio de 1955, según enmendada, mejor conocida como *Ley de Reclamaciones y Demandas Contra el Estado* (Ley Núm. 104-1955) a los Centros Médicos Académicos Regionales (CMAR), y miembros de facultad de estos, por los procedimientos médicos que se lleven a cabo en dichos centros en el ejercicio de sus funciones académicas y docentes. Dicha limitación establece un máximo de $75,000.00 por los daños sufridos por una persona y hasta $150,000.00 cuando los daños y perjuicios fueron causados a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado. 24 LPRA sec. 10035. El Tribunal Supremo de Puerto Rico

en el caso *Rodríguez Figueroa v. Centro de Salud*, 197 DPR 876, 890 (2017), señaló que la Ley Núm. 136-2006, *supra*, tuvo el efecto de imponer límites monetarios a la responsabilidad de los CMAR y a los facultativos que ejercieran labores docentes en éstos y no el de conferir una inmunidad absoluta ante cualquier reclamación de daños y perjuicios por impericia médica.

Asimismo, en *Ortiz et al. v. Hosp. San Lucas et al.*, 205 DPR 222, 236 (2020), nuestro Máximo Foro determinó que el límite a la responsabilidad comprendido en la Ley Núm. 136-2006, *supra*, aplica al conjunto de las partes demandadas en un pleito y no a cada parte de forma individual. Añadió que los límites impuestos a la responsabilidad vicaria de los CMAR por las actuaciones de su personal médico se fijan en función de la cantidad de causas de acción o la cantidad de reclamantes y aplican a todos los causantes del daño en conjunto. *Íd*.

### III.

En virtud de los señalamientos de error formulados por la parte peticionaria, en esencia, alegan que incidió el foro primario al denegar su solicitud de sentencia sumaria y no aplicar las disposiciones de la Ley Núm. 136-2006, *supra*, sobre los límites de responsabilidad civil.

No obstante, según expusimos previamente, nuestro ámbito jurisdiccional respecto a la revisión de asuntos interlocutorios en casos civiles está delimitado, en primer lugar, a lo dispuesto en la Regla 52.1 de las Reglas de Procedimiento Civil, *supra*. A su vez, luego de tomar en consideración los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones,

según enmendada, *supra*, rechazamos intervenir en los méritos para variar la determinación del foro primario.

En la *Resolución* recurrida, el foro *a quo* determinó que no procedía la adjudicación sumaria del pleito, dado que habían hechos materiales y esenciales en controversia, entre ellos: que aun cuando existe un acuerdo de afiliación, la cláusula de duración no le permitió concluir que hubieran llegado a acuerdo de renovación automática. Asimismo, dispuso que tampoco demostraron que las intervenciones, cuyos residentes en medicina de familia brindaron alguna evaluación a la recurrida, y que el doctor Cruzado, quien es profesor asistente en cirugía, estuvieron enmarcadas en el ejercicio de las funciones académicas y docentes. Por ello, concluyó que era prudente aquilatar la credibilidad de lo declarado mediante la celebración de un juicio.

Luego de evaluar los planteamientos formulados por las partes, y a la luz de la totalidad de las circunstancias, consideramos que el foro primario no incurrió en error de derecho o abuso de discreción alguno que amerite nuestra intervención. Así pues, brindamos deferencia al dictamen recurrido y rechazamos intervenir en los méritos para variar el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el auto discrecional solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones